UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEVE BOUTIN,<br><br>      **Plaintiff,**<br><br>v.<br><br>HOME DEPOT U.S.A., INC.,<br><br>      **Defendant.** | Civil Action No.  05-30162 MAP |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Home Depot U.S.A., Inc. ("Defendant" or "Home Depot") has moved for Summary Judgment pursuant to Rule 56.1 of the Local Rules of Civil Procedure and Rule 56 of the Federal Rules of Civil Procedure on all of the counts of Plaintiff's claims, and Defendant submits this Memorandum in support of its motion.   Because Plaintiff's claims are insupportable from the record developed in this matter, the Court should grant Defendant's Motion.

**I.**     **INTRODUCTION**

The centerpiece of Plaintiff's action is that Home Depot discriminated against him because of his alleged disability and his gender when it failed to allow his schedule to be changed from 8:30 a.m. – 5:30 p.m. (Monday through Friday) to 7:30 a.m.– 4:30 p.m. (Monday through Friday).  Plaintiff, who sought this change to accommodate his daughter's new bus schedule, has developed insufficient evidence to permit his groundless claims to survive this Court's review at summary judgment.

Plaintiff's Complaint alleges that Defendant (1) violated the Americans With Disabilities Act ("ADA") due to its failure to accommodate Plaintiff's schedule request; (2) retaliated against Plaintiff in violation of M.G.L. c. 151B for having filed a charge at the Massachusetts Commission Against Discrimination; (3) intentionally and/or negligently inflicted emotional distress upon Plaintiff ; and (4) discriminated against Plaintiff in violation of M.G.L. c. 151B on the basis of his gender because female employees were permitted fixed schedules to accommodate their child care needs. As set forth more fully below, none of these counts is legally or factually sufficient to survive Defendant's current motion.

Plaintiff's ADA claim fails on several grounds. First, Plaintiff has presented insufficient evidence that he is a qualified disabled individual – specifically, he has failed to demonstrate how he is substantially impaired in one or more major life activities. Although his medical records generally indicate that he was diagnosed with a depressive disorder, these records fail to reflect how Plaintiff suffers from substantial impairment in one or more major life activities in his medicated state. More significantly, however, even if Plaintiff were found to be a qualified disabled individual, his ADA claim would fail because Defendant had provided a fixed schedule (8:30 a.m. to 5:30 p.m.) to Plaintiff (his requested "accommodation") for almost 15 years. When he in 2003 requested to work an earlier fixed schedule, it was prompted by a change in his daughter's new school bus schedule and his desire to avoid any downtime in his morning routine after dropping his daughter at the school bus. Defendant denied Plaintiff's request to modify (to an hour earlier) his already-exceptional fixed schedule, and Plaintiff continued in his previously-approved set hours and days. Although Plaintiff submitted a doctor's note in June 2003

asking that Defendant not modify his "fixed schedule," at no time did Defendant deny Plaintiff a "fixed schedule," and Plaintiff never submitted medical documentation that suggested that the hour-earlier fixed schedule was medically necessary as an accommodation to Plaintiff's alleged disability.  In short, Plaintiff has failed to demonstrate that he is a qualified disabled individual or that Defendant failed to reasonably accommodate his alleged disability, and as a result, Plaintiff's ADA claim must be dismissed.

Equally weak are Plaintiff's claims alleging gender discrimination and retaliation.  Although Plaintiff has identified only two female full-time employees who were allowed fixed schedules, those individuals worked in positions (unlike Plaintiff's) that were amendable to having a fixed schedule.  More fundamentally, however, because Plaintiff has enjoyed a fixed schedule for almost fifteen years due to his childcare needs, his comparison of his situation to females who also enjoy fixed schedules evinces no evidence of disparate treatment because of his gender.   Plaintiff's retaliation claim likewise fails because there is absolutely no evidence that Defendant took *any* adverse action against Plaintiff, let alone an action motivated by the fact that Plaintiff filed an administrative charge with the Massachusetts Commission Against Discrimination.  On the contrary, Plaintiff remains currently employed at Home Depot and works a fixed schedule of 8:30 a.m. to 5:30 p.m., Monday to Friday.

Finally, Plaintiff's state law claims of either intentional or negligent infliction of emotional distress are barred by the Massachusetts Worker's Compensation Act, as has been definitively recognized by the Massachusetts Supreme Judicial Court since at least 1996.

Ultimately, as set forth more fully herein, judgment should be entered in Defendant's favor because the undisputed facts reveal that Plaintiff cannot prevail as a matter of law on any of his causes of action.

## II.     STATEMENT OF UNDISPUTED FACTS

Defendant hereby incorporates and makes reference to its Local Rule 56.1 Statement Of Material Facts As To Which No Genuine Issue Remains To Be Tried ("Facts").[1]

## III.    ARGUMENT

### A.     Plaintiff's Claims Must Be Dismissed Because There Is No Issue Of Material Fact In Dispute And Defendant Is Entitled To Judgment As A Matter Of Law.

Plaintiff's claims must be dismissed because there is no issue of material fact in dispute and Defendant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment; only a genuine issue of material fact is effective in this regard. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A "genuine" issue exists only if there is evidence from which a reasonable jury could return a verdict for the non-moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"'Even in employment discrimination cases where elusive concepts such as motive or intent are at issue,' summary judgment is appropriate if the non-moving party rests 'merely upon conclusory allegations, improbable inferences, and unsupported speculation.'" *Benoit v. Technical Manufacturing Corp.*, 331 F.3d 166, (1st Cir. 2003). The moving party may satisfy its

---

[1] These facts are deemed undisputed for the purposes of Defendant's Motion for Summary Judgment only.

4

initial burden "by pointing to the absence of adequate evidence supporting the nonmoving party's case." *Michelson v. Digital Financial Services*, 167 F.3d 715, 720-21 (1st Cir. 1999).

    **B.**    **Plaintiff Cannot Establish A Violation Of The Americans With Disabilities Act.**

To survive summary judgment on his claim for failure to provide a reasonable accommodation pursuant to the ADA, Plaintiff must produce sufficient evidence for a reasonable jury to find: (1) he is "disabled" as defined by the statute; (2) he was "able to perform the essential functions of the job with or without reasonable accommodation;" and (3) Defendant, "despite knowing of [Plaintiff's] disability, did not reasonably accommodate it." *Estades-Negroni v. The Associates Corp. Of North America*, 377 F.3d 58, 63 (1st Cir. 2004). Plaintiff cannot meet this standard.

    **1.**    **Plaintiff Is Not "Disabled" Within The Meaning Of The ADA.**

To be considered "disabled" under the ADA, Plaintiff must demonstrate "a physical or mental impairment that substantially limited one or more of his major life activities." *Benoit,* 331 F.3d at 175. "The burden is on the plaintiff to establish these three elements." *Calero-Cerezo v. United States Dept. of Justice*, 355 F.3d 6, 20 (1st Cir. 2004). The determination of whether a plaintiff satisfies these elements must be made on a case by case basis. *See Toyota Motor Manufacturing, Kentucky, Inc. v. Williams,* 534 U.S. 184, 198, 122 S. Ct. 681, 692 (2002). Plaintiff has not satisfied his burden.

    **a.**    **Plaintiff's impairment is not of the type the ADA was intended to protect.**

It is true that this Court has recognized depression as a mental impairment that *may* constitute a disability under the ADA. *See Calero-Cerezo*, 355 F.3d at 20. Courts that recognize depression as an ADA-protected impairment often are faced with what is

defined as "major" depression or "severe" depression. *See e.g., Calero-Cerezo*, 355 F.3d at 20 (addressing "major depression"); *Estades-Negroni*, 377 F.3d at 63 (addressing "severe depression"). In the present case, Plaintiff does not suffer from "major" or "severe" depression. Rather, Plaintiff's diagnosis is "depressive disorder" and "anxiety disorder." (Facts at ¶ ).

Merely having an impairment, however, does not constitute a disability as defined by the ADA. *See Toyota*, 534 U.S. at 195, 122 S. Ct. at 690. A plaintiff also needs to demonstrate that the impairment "substantially limits" a "major life activity." *See Toyota*, 534 U.S. at 195, 122 S. Ct. at 690; *see also Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, (1st Cir. 1997) (holding that plaintiff's depression was not an ADA-protected impairment if there was no evidence it substantially impaired a major life activity).

In the present case, Plaintiff alleges his anxiety and depression affects his social life insofar as he does not always have "the energy or willingness to go out, do things after work. Maybe go places with my kids or have a social life of my own or attend parties." (Facts at ¶ 40). Plaintiff went on to say it affects his life in terms of "[h]ow much energy I have to interact with the family and get things done that need to be done around the house." (Facts at ¶ 40). Moreover, Plaintiff describes the effect of the anxiety and depression on his social life and at home as "intermittent." (Facts at ¶ 41). By Plaintiff's own admission, his anxiety and depression do not affect his life in any other way. (Facts at ¶ 42).

As a matter of law, Plaintiff's own description of how his anxiety and depression affect his day to day life is insufficient evidence for a reasonable juror to find his

6

impairment "substantially limits a major life activity." First, "major life activities" are those that are "of central importance to daily life" such as "walking, seeing, and hearing . . . ." *Toyota*, 534 U.S. at 197, 122 S. Ct. at 691. Plaintiff has identified no major life activity in which he is being impaired. (Facts at ¶ ). Plaintiff's testimony amounts, at most, to an assertion that his ability to socialize or interact with others is limited by his anxiety and depression. The First Circuit expressly has rejected "interacting with others" as a major life activity. *See Soileau*, 105 F.3d at 15 ("To impose legally enforceable duties on an employer based on such an amorphous concept would be problematic.")

Even assuming *arguendo* that interaction with others could constitute a major life activity, Plaintiff's claim still fails because there can be no dispute Plaintiff has not been substantially limited in that activity. *See Soileau*, 105 F.3d at 15. In determining whether a plaintiff is "substantially limited," one essential factor to consider is the "nature and severity" of the impairment. *See Soileau*, 105 F.3d at 15. ***"Impairment is to be measured in relation to normalcy, or, in any event, to what the average person does."*** *Id*. Again, Plaintiff explains that, due to his anxiety and depression, he does not always feel he has the energy to participate in social events and feels his energy level negatively affects his interest in accomplishing things around the house or going places with his children. (Facts at ¶¶ 40-41). If whether an impairment is "substantially limiting" is measured "in relation to normalcy" or "what the average person does," certainly Plaintiff's description of his reduced energy level, without question, does not rise to the level of "substantially" limiting anything. To be sure, Congress did not set out to protect employees from what Plaintiff has described. To do so, would be to guarantee the Act's protections to all busy and tired working parents.

7

In determining whether an impairment "substantially" limits a major life activity, the Court should also consider the duration of the impairment. See *Soileau*, 105 F.3d at 16. An impairment cannot be substantial when it interferes "in only a minor way . . . ." *Benoit*, 331 F.3d at 175-76. In this case, Plaintiff admits his symptoms only affect his life on an "intermittent" basis. (Facts at ¶ 41). This simply does not rise to the level the ADA intends to protect.

Finally, a determination of whether a plaintiff is substantially limited in a major life activity under federal law requires consideration of mitigating measures such as medication. *See Sutton v. United Air lines*, 527 U.S. 471, 119 S. Ct. 2139 (1999) (holding mitigating measures such as medication must be taken into account in determining whether an individual is disabled within the meaning of ADA); *Calef v. Gillette Co.*, 322 F.3d 75, 83 (2003) (noting the relevant disability determination turns on the plaintiff's symptoms with medication and counseling). Plaintiff admits that his anxiety and depression are controlled with medication. (Facts at ¶¶ 37-39). From at least 2002 to the present, Plaintiff has taken Wellbutrin, an anti-depressant. (Facts at ¶ 37). Since May 2003, Plaintiff also has been treated with Valium (also referred to as Diazepam). (Facts at ¶ 37). Specifically relative to the relevant time period, Summer 2003, Plaintiff's medical records reveal that the medication alleviated any sleep and anxiety problems he had and generally was helping him. (Facts at ¶ 38). In fact, Plaintiff reported to Dr. White that "things are much improved" with Wellbutrin and "the Valium helps with sleep and nighttime relaxation." (Facts at ¶ 38). Plaintiff testified his symptoms from anxiety and depression would be worse without his medications and his symptoms are lessened as a result of his medication. (Facts at ¶ 39).

Viewing Plaintiff's anxiety and depression in his medicated state, as the Court must, there can be no dispute Plaintiff has failed to meet his burden of demonstrating an impairment that substantially limits a major life activity.

### 2. **Defendant Provided Plaintiff With A Reasonable Accommodation.**

In addition to establishing a disability as defined by the ADA, Plaintiff must demonstrate that Defendant knew of his disability and failed to reasonably accommodate it. *See Estades-Negroni*, 377 F.3d at 63. If a plaintiff "offers proof that a sufficiently specific request was made, the defendant may attempt to prove that, in fact, the proposed accommodation was not feasible and would constitute an 'undue' hardship." *Calero-Cerezo*, 355 F.3d at 24. To adequately support a denial of a request, the employer must produce "at least some modicum of evidence showing that the [requested accommodation] would be a hardship, financial or otherwise." *Calero-Cerezo*, 355 F.3d at 24.

#### a. **Defendant already provided Plaintiff with a fixed schedule to enable him to meet his child care responsibilities before his Summer 2003 request for a new fixed schedule.**

In 2002, Home Depot required all full-time employees to work flexible schedules. (Facts at ¶ 10). Shortly after Home Depot announced this policy change, Plaintiff requested he keep his then-fixed schedule because it allowed him to meet his child care responsibilities. (Facts at ¶ 11). He brought in a doctor's note stating Plaintiff was "trying to raise his 9 year old daughter" and the doctor felt "changing Mr. Boutin's schedule to include evenings and nights would be very detrimental to his mental status, and could cause a setback in his treatment." (Facts at ¶ 11). This doctor's note did not demonstrate Plaintiff suffered from a legally-protected disability or that the specific

9

schedule of 7:30 a.m. to 4:30 p.m. was required to alleviate his alleged symptoms. (Facts at ¶ 11). Nevertheless, Home Depot accommodated Plaintiff's child care schedule. (Facts at ¶ 12).[2] Plaintiff was permitted to keep his fixed schedule of 8:30 a.m. to 5:30 p.m., Monday through Friday. (Facts at ¶¶ 9, 12). *See Bryant v. Caritas Norwood Hospital*, 345 F. Supp. 2d 155, 169 (D. Mass. 2004) ( "the ADA does not require an employer to grant its disabled employee's accommodation of choice, even if it is a reasonable one, and instead provides the employer with 'the ultimate discretion to choose between effective accommodations.'")

Approximately one year later, in Summer 2003 Plaintiff made another request relative to his schedule. (Facts at ¶ 19). Plaintiff requested his fixed schedule be changed from 8:30 a.m. to 5:30 p.m., Monday through Friday, to 7:30 a.m. to 4:30 p.m., Monday through Friday. (Facts at ¶ 19). Plaintiff requested this schedule change because his daughter's school hours were going to change in Fall 2003. (Facts at ¶ 20). Specifically, he advised Home Depot that the school bus was going to pick her up earlier, which meant Plaintiff could now be at work at 7:30 a.m. rather than 8:30 a.m. (Facts at ¶ 20).

During this time period, Plaintiff provided his second doctor's note. (Facts at ¶ 21). By that letter dated June 23, 2003, Dr. Whitman indicated she felt "changing his schedule would impair his ability to cope", apparently addressing Plaintiff's concern that his schedule may be modified in a way that would not meet his childcare needs. (Facts at

---

[2] Plaintiff insisted on his fixed schedule because "it seemed easier to have the schedule the same all of the time." (Facts at ¶ 18). Since the days when Plaintiff had his children changed often, he "found it harder to ask for changes at Home Depot [than] to keep a set schedule" and "[i]t just made more sense to have one set schedule [than] to keep asking for changes all of the time." (Facts at ¶ 18).

10

¶ 21). There are no other documents in Dr. Whitman's medical records that reflect any concern about Plaintiff's work schedule in or around Summer 2003. (Facts at ¶ 21).[3]

Defendant reached out to Plaintiff by letter to obtain more information regarding his alleged medical condition to ascertain whether additional accommodations were required or appropriate. (Facts at ¶ 22). Plaintiff admittedly never made additional requests for a schedule change after Summer 2003. (Facts at ¶ 22). *See Bryant v. Caritas Norwood Hosp.*, 345 F. Sup. 2d 155, 169-70 (D.Mass. 2004) (holding plaintiff precluded a finding that employer failed to accommodate her where she effectively cut off the interactive process through her silence in the face of employer's offers).[4] Plaintiff was allowed to retain his 8:30 a.m. to 5:30 p.m. fixed schedule but Defendant did not approve the change to the 7:30 a.m. to 4:30 p.m. fixed schedule. (Facts at ¶ 24). Indeed, Plaintiff admits the only impact of not getting this change in schedule was that he had some free time that he considered "a waste of time" between when he dropped his daughter off at the bus and when he had to arrive for work. (Facts at ¶ 26). Also, on the days her mother did not pick her up, their daughter had to stay with the women who watched her after school for an extra half hour. (Facts at ¶ 26). It is axiomatic that a "reasonable accommodation" under the ADA is so the employee can perform the essential functions of his job, not merely to accommodate the vagaries of personal family scheduling. *See Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 257 (1st Cir. 2001) (noting part of plaintiff's

---

[3] Plaintiff was treated by Dr. Whitman until she transferred him to Dr. White in May 2004. (Facts at ¶ 21)..

[4] Plaintiff provided a doctor's note in March 2004 but even Plaintiff could not recall if that was in response to Defendant's December 2003 inquiry. (Facts at ¶ 23). Moreover, that note – like the first two Plaintiff provided – provided insufficient evidence of an ADA-protected disability. (Facts at ¶ 23). Rather, it provided, in part, that Plaintiff is a "single parent and responsible for his 10 year old daughter," that "stressors" should be reduced, and that one "stressor is when there is a conflict between his work hours and the hours he needs to care for his daughter." (Facts at ¶ 23).

burden is to show the proposed accommodation would enable her to perform the essential functions of her job).

                **b.**     **The requested accommodation would have resulted in an undue hardship.**

A denial of an accommodation request can be justified where the employer can show it would result in significant difficulty or expense. *See* 29 C.F.R. § 1630.2(p)(1); *Cloutier v. Costco Wholesale Corp.*, 390 F.3d 126, 132 (1st Cir. 2004) (holding an employer has no obligation to provide an accommodation that would result in an undue hardship); *Calero-Cerezo,* 355 F.3d 6 at 24 (noting an employer may refuse to give an accommodation where it can show the accommodation would pose undue hardship). In the present case, in addition to the fact that Plaintiff's doctor's notes failed to establish a protected disability, Defendant did not provide the requested accommodation because, to do so, would result in an undue hardship. (Facts at ¶ 25).

Allowing Plaintiff to start work at 7:30 a.m. and leave at 4:30 p.m. would have imposed a significant difficulty on employee coverage at the Phone Center, where Plaintiff worked at the time. (Facts at ¶ 25). The Phone Center needed coverage until 6:00 p.m. (Facts at ¶ 25). Plaintiff's 5:30 p.m. departure, which he enjoyed for many years and still enjoys, already left a half-hour void. (Facts at ¶ 25). As a result, the managers are forced to take an employee from a different position and place him or her at the Phone Desk for that half-hour. (Facts at ¶ 25). Not only does this disturb staffing levels, but it also results in the phones not being covered at all times, which is essential. (Facts at ¶ 25). Obviously, if Plaintiff were to start leaving work at 4:30 p.m., that would only exacerbate the problem. (Facts at ¶ 25). Moreover, the shifting of staffing unfairly burdens the other employees forced to cover the Phone Desk in Plaintiff's absence.

(Facts at ¶ 25). For these reasons, in addition to the lack of evidence that Plaintiff was disabled as defined by the ADA, Defendant denied Plaintiff's second request for a modified fixed schedule that was not reasonably related to his job duties and caused undue hardship to the store.

      **C.**    **Plaintiff Cannot Establish A *Prima Facie* Case Of Retaliation.**

"To succeed on a claim of retaliation, 'the plaintiff must prove that he reasonably and in good faith believed that the employer was engaged in wrongful discrimination, that he acted reasonably in response to his belief, and that the employer's desire to retaliate against him was a determinative factor in its decision to terminate his employment.'" *Abramian v. Pres. & Fellows of Harvard College*, 432 Mass. 107, 121 (2000).

In the instant case, Plaintiff simply has not presented any evidence to suggest Defendant's denial of his request for the change in his fixed schedule was connected to a desire to discriminate against him. Plaintiff has not even alleged as much. Plaintiff's claim for retaliation also fails because he cannot show that he suffered an adverse employment action and a causal connection between the adverse employment action and the alleged retaliation. *See Hernandez-Torres v. Intercontinental Trading, Inc.*, 158 F.3d 43, 47 (1st Cir. 1998).

Plaintiff alleges retaliation for having filed a Charge with the MCAD. (Facts at ¶¶ 43-45). Specifically, Plaintiff's retaliation claim is based on his personal belief that he did not always have the level of assistance at the Phone Center Desk that he needed. (Facts at ¶ 44). When Plaintiff was asked at deposition why he thought this was in retaliation for having filed a Charge, he responded "Because I don't remember that

happening before." (Facts at ¶ 44). Plaintiff also believed the Day Operations Manager, Patricia LaFore, retaliated against him by "using every opportunity to get me alone to reassert herself that she was my boss and I should be doing what she tells me." (Facts at ¶ 45). Finally, Plaintiff alleges Christopher Catalina, the Store Manager, told Plaintiff he "could be on the outside looking in." (Facts at ¶ 45). This is the extent of Plaintiff's allegations of retaliation. (Facts at ¶ 46).

First, whether an employment action is "adverse" is judged by an objective standard. *See McKenzie v. Potter*, 2004 WL 1932766, *4 (D. Mass. 2004). To prove that an employment action is "adverse," a plaintiff must show that the employer either: "(1) took something of consequence from her, say, by discharging or demoting her, reducing her salary, or divesting her of significant responsibilities or (2) with[held] from her an accouterment of the employment relationship, say, by failing to follow a customary practice of considering her for promotion after a particular period of service." *Id.* Again, Plaintiff alleges essentially his supervisor liked him to know who was boss, his Store Manager made an ambiguous comment, that obviously lead to no tangible adverse employment action, and he did not always have the level of staffing support he wanted at the Phone Center where he worked. (Facts at ¶¶ 44-45). As a matter of law, none of these allegations, together or separately, rise to the level of an adverse employment action. *Cf. McKenzie*, 2004 WL 1932766 at *4. What is more, there is no evidence of a causal connection between the filing of the Charge and this alleged conduct. Indeed, when asked why he believed this was evidence of retaliation, Plaintiff responded only "[b]ecause I don't remember that happening before." (Facts at ¶ 44).

For these reasons, Plaintiff claim of retaliation fails as a matter of law.

**D.     Plaintiff's Claim For "Negligent or Intentional Infliction of Emotional Distress" Must be Dismissed Because it is Barred by the Exclusivity Provision of the Workers' Compensation Act.**

The Massachusetts Supreme Judicial Court has held conclusively that claims for intentional and negligent infliction of emotional distress by employees against employers are barred by the exclusivity provision of G.L. c. 152, § 24. *See Doe v. Purity Supreme, Inc.*, 422 Mass. 563, 565 (1996) (finding plaintiff's claims of intentional and negligent infliction of emotional distress arising from sexual harassment and rape barred by Workers' Compensation Act); *Green v. Wyman-Gordon Co.*, 422 Mass. 551, 558-59 (1996) (holding that common-law claims for intentional and negligent infliction of emotional distress were barred by the exclusivity provision of G.L. c. 152); *Anzalone v. Massachusetts Bay Transp. Auth.*, 403 Mass. 119, 123-24 (1988) (finding that an employee cannot bring a claim of intentional infliction of emotional distress against his employer). Actions for such damages are barred where "(1) the plaintiff is shown to be an employee; (2) his condition is shown to be a 'personal injury' within the meaning of the Workers' Compensation Act; (3) the injury is shown to have arisen 'out of and in the course of . . . employment.'" *Presto v. Sequoia Systems, Inc. et al.*, 633 F. Supp. 1117, 1120-21 (D.Mass. 1986) (quoting *Foley v. Polaroid Corp.*, 381 Mass. 545, 548-49 (1980)); *see also Green*, 422 Mass. at 558.

In the present case, all three of these conditions are satisfied. First, there is no question that Plaintiff was an employee of Defendant at all relevant times. (Facts at ¶ 7). Second, "personal injuries" are defined by the Workers' Compensation Act as "mental or emotional disabilities only where the predominant contributing cause of such disability is an event or series of events occurring within any employment." M.G.L. c. 152, § 1(7A). It is well-established that emotional distress as alleged by Plaintiff is considered to be a

15

"personal injury" within the meaning of the Workers' Compensation Act. *See Doe*, 422 Mass. at 565; *Green*, 422 Mass. at 558. Finally, the injuries Plaintiff alleges relate to his requests for a particular work schedule, on the premises of Plaintiff's workplace, and while he was in the course of performing his assigned duties. (Facts at ¶ 6). Accordingly, Plaintiff's alleged injuries arose "out of and in the course of" his employment with Home Depot. *See Doe*, 422 Mass. at 566 (finding that injuries arose in course of employment where took place on employer's premises and only connection between parties was employment). As all three conditions are met in the instant case, Plaintiff's claims for emotional distress must be dismissed.

### E. Plaintiff's Claim for Gender Discrimination Must Be Dismissed Because Plaintiff Suffered No Adverse Employment Action Caused By Alleged Discriminatory Animus And Defendant's Reason For Its Action Were Not Pretextual.

The *prima facie* case for gender discrimination in the terms and conditions of employment has been stated as follows: 1) membership in a protected class; 2) satisfactory job performance; 3) an adverse employment action taken against the Plaintiff based on the protected characteristic; and 4) the discriminatory animus caused the decision to take the adverse employment action. *See Zhang v. Massachusetts Institute of Technology*, 46 Mass. App. Ct. 597, 601 (1999). Because Plaintiff has suffered no adverse employment action caused by discriminatory animus, this claim must fail. An "adverse employment action" includes "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees." *Hernandez-Torres v. Intercontinental Trading Inc.*, 158 F.3d 43, 47 (1st Cir. 1998). Whether an employment action is "adverse" is judged by

16

an objective standard. *See Marrero v. Goya of Puerto Rico, Inc.,* 304 F.3d 7, 23 (1st Cir. 2002).

In the present case, Plaintiff's request for a fixed schedule from 8:30 a.m. to 5:30 p.m., Monday through Friday, has been accommodated for fifteen years. (Facts at ¶ 9). Plaintiff's request for yet another change in that schedule, so that he would start work one hour earlier, was denied because of the absence of evidence that the change was required by an ADA-protected disability and because the change would result in an undue hardship for the store. (Facts at ¶¶ 19-26). This simply does not rise to the level required to amount to an "adverse employment action." *Hernandez-Torres.,* 158 F.3d at 47.

Even if Plaintiff was able to satisfy his *prima facie* case, the burden then shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its decision. *See Zhang,* 46 Mass. App. Ct. at 601. Indeed, as set forth fully above, Defendant has done so. As explained above, granting Plaintiff the additional change in his already fixed schedule would have resulted in undue staffing burdens for Defendant. (Facts at ¶ 25).

Once Defendant has met its burden of persuasion, the burden shifts back to Plaintiff to show that the reason given was not the real reason but, rather, a pretext for discrimination. *See Matthews v. Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 128 (1997). "The most probative means of establishing . . . pretext . . . is to demonstrate that similarly situated [female] employees were treated differently." *Matthews*, 426 Mass. at 129. Plaintiff cannot accomplish this in the matter before the Court because no employees are permitted fixed schedules like the one Plaintiff enjoys, regardless of their gender. (Facts at ¶ 27).

Since 2002, only part-time employees are allowed to have schedules that are literally "fixed" schedules, like Plaintiff's. (Facts at ¶ 27). No full-time employees are allowed to have absolutely fixed schedules. (Facts at ¶ 27). In other words, although certain positions are more amenable to schedules with regularity, those employees still are required to maintain flexibility to work outside of those schedules, including on weekends, should there be a business need for that. (Facts at ¶ 27).[5]

When asked at deposition which female employees Plaintiff believed had fixed schedules in 2003 in response to their request to accommodate childcare needs as he alleges, Plaintiff testified to four female employees: Amy Boyer, Dotti Johnson, Meg Giroux, and Marsha Duval. (Facts at ¶ 30). Two of these employees were part-time employees. As noted above, part-time employees are permitted to work fixed schedules. (Facts at ¶ 32). The remaining two employees were in positions, unlike Plaintiff's position, that allow for a somewhat regular schedule. (Facts at ¶¶ 28, 31).

Specifically, Amy Boyer was an Expediter. (Facts at ¶¶ 28, 31). The position of Expediter requires contact with vendors who only are available from 8:00 a.m. to 5:00 p.m., Monday through Friday. (Facts at ¶ 28). As a result, employees who are Expediters often only work those hours. (Facts at ¶ 28). Nevertheless, Expediters still are required to be flexible to work during other hours, should such a staffing need arise. (Facts at ¶ 28). Dotti Johnson was a Pro Cashier. (Facts at ¶ 28). "Pro Cashier" is a cashier who works at the Pro Desk, which is where contractors make their purchases. (Facts at ¶ 28). Pro Cashiers work either from 6:00 a.m. to 3:00 p.m. or 9:00 a.m. to 6:00

---

[5] Plaintiff has not sought any of these full-time positions which traditionally maintained a fixed schedule nor has he expressed an interest in a part-time schedule. (Facts at ¶ 29).

p.m., Monday through Friday, because these are the only times the Pro Desk is open. (Facts at ¶ 28). Finally, Meg Giroux and Marsha Duval are part-time employees. (Facts at ¶ 32). Again, part-time employees are permitted to have fixed schedules. (Facts at ¶ 32).

Plaintiff can present no evidence that similarly situated female employees were treated more favorably than he. As a result, Plaintiff cannot establish Defendant's reason for denying his request to start work at 7:30 a.m. was pretextual. Plaintiff's gender discrimination claim must fail as a matter of law.

### III.   CONCLUSION

For the foregoing reasons, all of Plaintiff's claims must be dismissed as a matter of law and judgment must enter in favor of Defendant.

    Respectfully submitted,

    HOME DEPOT, U.S.A., INC.
    By its attorneys,


    /s/ Tracy Thomas Boland_____
    Robert P. Joy (BBO No. 254820)
    Joseph P. McConnell (BBO No. 566412)
    Tracy Thomas Boland (BBO No. 638878)
    MORGAN, BROWN & JOY, LLP
    200 State Street
    Boston, Massachusetts  02109
    617 523-6666

Date: September 19, 2006

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the above document was served on counsel for Plaintiff, Tammy Sharif, Law Firm of Tammy Sharif, 2 Mattoon Street, Suite 2, P.O. Box 5226, Springfield, MA 01105, by electronic notification, this 19th day of September, 2006.

                                                  /s/ Tracy Thomas Boland
                                                  Tracy Thomas Boland