UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEVEN BOUTIN, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 05-30162-MAP |
| HOME DEPOT U.S.A., INC., | ) |
| Defendant. | ) |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff opposes Defendant's Motion for Summary Judgment because, based on the legal arguments raised by Defendant, there are genuine issues of material fact and that Defendant is not entitled to judgment as a matter of law

Defendant's motion for summary judgment should be denied because a jury could determine that Plaintiff clearly requested an accommodation when he contacted his supervisor and asked that his work schedule be set for hours conducive to his child care needs.

Defendant's motion for summary judgment should be denied because plaintiff can show that defendant's purportedly legitimate, nondiscriminatory reason for the adverse employment action is really pretext for discrimination by showing that the reason is false. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993)

The Americans with Disabilities Act, *42 U.S.C.S. § 12101* et seq., defines "disability" as either (1) a physical or mental impairment that substantially limits one or more of an individual's

major life activities, (2) a record of such impairment, or (3) a perception of having such an impairment. *42 U.S.C. § 12102(2)*. *29 C.F.R. § 1630.2* LaBrecque v. Sodexho USA, Inc., 287 F. Supp. 2d 100, *2003 U.S. Dist.*

## ARGUMENT

**A. Plaintiff Has Established A Violation Of The Americans With Disabilities Act.**

To survive summary judgment on his claim for failure to provide a reasonable accommodation pursuant to the ADA, Plaintiff must produce sufficient evidence for a reasonable jury to find: (1) he is "disabled" as defined by the statute; (2) he was "able to perform the essential functions of the job with or without reasonable accommodation;" and (3) Defendant, "despite knowing of [Plaintiffs] disability, did not reasonably accommodate it." *Estades-Negroni v. The Associates Corp. Of North America,* 377 F.3d 58, 63 (1st Cir. 2004). Plaintiff has met this standard.

In considering a motion for summary judgment, the Court must examine the record evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." *Feliciano de la Cruz v. El Conquistador Resort and Country Club, 218 F.3d 1, 5 (1st Cir. 2000).*

To prevail on an ADA claim, a plaintiff has the burden of establishing (1) that he is disabled within the meaning of the ADA; (2) that he is qualified to perform the essential functions of the job; and (3) that his employer took adverse action against him because of his disability. *Carroll v. Xerox Corp., 294 F.3d 231 237 (1st Cir. 2002).* Here Plaintiff has met his burden that he is disabled within the meaning of ADA because he has medical records to support his disabilites (Depressive Disorder, Anxiety and ADHD) within the meaning of American Disabilities Act. *(Exhibit F)*

Under the ADA, a person may be said to have a "disability" if he (A) has a physical or

2

mental impairment that substantially limits one or more of the major life activities of an individual; (B) has a record of such an impairment; or (C) is regarded as having such an impairment. 42 U.S.C. § 12102(2). For the impairment to be considered "substantially limiting," it must be permanent or long term. *Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 122 S. Ct. 681, 691, 151 L. Ed. 2d 615 (2002).* Here Plaintiff has met all elements.

Plaintiff asserts that he has a mental impairment that substantially limits his ability to cope with stress that ordinary people who do not have a mental impairment would be able to deal with. Plaintiff is treating for depression disorder, anxiety and ADHD. All of which have been classified as disabilities within the meaning of American Disabilities Act. Plaintiff's depressive disorder, anxiety and ADHD is regarded as an impairment by his physician and supported by medical records. Plaintiff Plaintiff's disability is a major life activity which has been substantially limited within the meaning of the ADA. *42 U.S.C. § 12102(2).* Finally, Plaintiff's impairment ise considered to be "substantially limiting," because it is permanent and long term. In the year 2002, Plaintiff was diagnosed with Depressive Disorder NOS with features of anxiety and ADHD. (Exhibit F) Plaintiff's medical reports do not show any indication that his impairments are curable or will be permanently cured.

To make out a prima facie case of discrimination based on this definition of disability, Plaintiff must establish three elements: (1) that he had a "physical or mental impairment" that (2) "substantially limits" (3) "a major life activity." 42 U.S.C. § 12102(2)(A). Here, Plaintiff has successfully shown that he met the first element; his diagnosed Depressive Disorder NOS, anxiety and ADHD is a mental impairment within the meaning of the statute. Plaintiff has successfully shown that he met the second and third elements because the evidence Plaintiff produced does suffice, as a matter of law, for a reasonable jury to concluded that he is substantially impaired in a major life activity. *RANDALL J. SOILEAU, Plaintiff, Appellant, v. GUILFORD OF MAINE, INC.,* 105 F.3d 12, *; 1997 U.S. App.

Plaintiff constructs his argument by saying that the ability to adequately care for his children would be greatly diminished if his work schedule does not allow for him to care for his children. Additionally, Plaintiff asserts that his mental state would greatly impair his ability to cope with life is substantially impaired due to not having a fixed schedule. Furthermore, Plaintiff asserts that the uncertainty of how long his current fixed schedule would last further exasperates his condition as he feels that Defendant will change his fixed schedule when this Civil Case has been resolved. Plaintiff asserts that Defendant is only maintaining status quo pending the out come of this civil matter as Defendant has never acknowledged Plaintiff's validity of his disability that falls within the American Disabilities Act. Plaintiff's mental state and disability is perpetually exasperated due to the uncertainty whether his fixed worked schedule will cease upon the disposition of this case.

The Americans with Disabilities **Act's** (ADA), *42 U.S.C.S. § 12101* et seq., regulations state that it may be necessary for the covered entity, the employer, to initiate an informal, interactive process with the qualified individual, the employee, with a disability in need of the accommodation. *29 C.F.R. § 1630.2(o)(3) (2005).* Thus, once the employer becomes aware of the disability of an employee, he is expected to engage in a meaningful dialogue with the employee to find the best means of accommodating that disability. *Tobin v. Liberty Mutual. Ins. Co., 433 F.3d 100, 2005 U.S. App.* In this case, Defendant failed to initiate an interactive process with Plaintiff. Instead, Defendant ignored Plaintiff's requests for reasonable accommodations until he filed a discrimination suit against Defendant with MCAD.

On several occasions during the year 2003, Plaintiff approached his department manager, Patricia LaFore, to request a change in his schedule to accommodate his child care need. (Amended Complaint ¶20) Plaintiff formally informed Defendant that Plaintiff is disabled due to depression and anxiety which is exacerbated by Defendant's schedule restrictions and his

4

inability to care for his daughter after school. *(Amended Complaint ¶22)*

Furthermore, Plaintiff had submitted a recommendation from his treating physician confirming his ongoing treatment for depression anxiety and his need for a schedule change. *(Amended Complaint ¶23)* Rather than accommodate Plaintiff's request for a specific schedule, Ms. Lafore summarily denied the request and threatened to place Plaintiff on a rotating schedule with no set hours. (Amended Complaint ¶25) Ms. LaFore's conduct merely served to exacerbate Plaintiff's ongoing depression and anxiety. *(Amended Complaint ¶27)*

It was only after Plaintiff asserted his constitutional right to file a discrimination claim against Defendant in Massachusetts Commission Against Discrimination (MCAD) that he received a schedule that would accommodate his disability within the meaning of American Disabilities Act.

On or about July 15, 2003, Plaintiff filed a discrimination charge with (MCAD) for disability and gender discrimination. *(Amended Complaint ¶29)* Ms. LaFore intended to inflict emotional destress, or knew or should have known that emotional distress was the likely result of her conduct. *(Amended Complaint ¶28)*

**B. Plaintiff's impairment** is **the type the ADA was intended to protect.**

An employer violates the Americans with Disabilities Act, 42 U.S.C.S. §§ 12182-12189, if it knows of a disability yet fails to make reasonable accommodations. *Estades-Negroni v. The Associates Corp. Of North America,* 377 F.3d 58, 2004 (1st Cir. 2004).

The First Circuit recognizes depression as a mental impairment that may constitute, at least in some circumstances, a disability under federal law. Davila-Rivera v. Caribbean Refrescos, Inc., 150 Fed. Appx. 3, *2005 U.S. App*

The Americans with Disabilities Act of 1990, 42 U.S.C.S. § 12101 et seq., prohibits

discrimination in employment against qualified persons with a disability. Three alternative definitions of disability are provided: an individual is considered to be disabled if (1) she has a physical or mental impairment that substantially limits one or more of her major life activities, 42 U.S.C.S. § 12102(2)(A); (2) she has a record of such an impairment, § 12102(2)(B); or (3) she is regarded as having such an impairment, § 12102(2)(C). Major life activities are activities that are of central importance to daily life. Courts recognize various major life activities, including the performance of manual tasks, lifting, and sleeping.  Concentrating may be reasonably subsumed within the broader context of working and learning. *Davila-Rivera v. Caribbean Refrescos, Inc., 150 Fed. Appx. 3,* 2005 U.S. App  Here Plaintiff has satisfied all three elements. His major life activities such as physically rearing children are activities that are of central importance of manual tasks. He has a medical record of his impairments and is regarded as having mental disabilities by his physician.

    **C. Initially Defendant knew of Plaintiff's disability and failed to reasonably accommodate.**

On or about May 13, 2002, Plaintiff presented a letter from his physician, Schuyler Whitman, that stated he is being treated for depression and that changing is work schedule would be very detrimental to his mental status.  *(Exhibit A)*  On or about June 25, 2003, Plaintiff presened a letter to Defendant from his physician Schuyler Whitman, MD stating that he is being treated for depression and anxiety and that a change of his schedule would impair his ability to cope. *(Exhibit B)*

On or about June 25, 2003 and four (4) months after receipt of Plaintiff's letter dated June 25, 2003, Defendant issues a letter dated December 23, 2003 to Plaintiff asking why it is medically necessary to work a particular schedule from 7:30 to 4:30 p.m. *(Exhibit C)*  On or about March 26, 2004, Plaintiff again presents a letter to Defendant from his treating physician, William White, MD that states that it is important for Plaintiff's ongoing health to keep a work

schedule during the hours which allow him to be home to supervise his daughter. *(Exhibit D)*

On or about May 17, 2004, Plaintiff presents a letter to Defendant from his physician, Schuyler Whiteman, MD stating that because he help cares for a second child, it would alleviate stress and support his mental health if he is home for child care. *(Exhibit E)*

### D. Plaintiff's Medical Need to Reasonable Accomodations Does Not Constitue Undue Hardship

If a plaintiff "offers proof that a sufficiently specific request was made, the defendant may attempt to prove that, in fact, the proposed accommodation was not feasible and would constitute an 'undue' hardship." *CaleroCerezo,* 355 F.3d at 24. To adequately support a denial of a request, the employer must produce "at least some modicum of evidence showing that the [requested accommodation] would be a hardship, financial or otherwise." *Calero-Cerezo,* 355 F.3d at 24. Todate Defendant has not acknowledged Plaintiff's disabilities that fall within the American Disabilities Act and nor has it showed that Plaintiff's requested accommodation is a hardship.

Defendant states in the current motion that "it is axiomatic that a reasonable accommodation" under the ADA is so the employee can perform the essential functions of his job, not merely to accommodate the vagaries of personal family scheduling. Plaintiff can perform the essential functions of his job due to set hours that would accommodate his child care needs. Medical records support the fact that but for a set schedule, Plaintiff's disability would exasperate and cause him to not cope with daily life functions, including but not limited to family scheduling. Due to Plaintiff's disability, he is not able to cope and handle daily stress as would an average person who does not suffer the same disability.

### E. Defendant Failed to Engage in Interative Process Claim

The Americans with Disabilities Act (Act), 42 U.S.C.S. § 12101 et seq., imposes liability on an employer for not making reasonable accommodations to the known physical or mental limitations of an employee. 42 U.S.C.S. § 12112(b)(5)(A). Because an employee's disability and concomitant need for accommodation are often not known to the employer until the employee requests an accommodation, the Act's reasonable accommodation requirement usually does not apply unless "triggered by a request" from the employee. The employee's request must be sufficiently direct and specific, giving notice that she needs a special accommodation. *Reed v. Lepage Bakeries, Inc., 244 F.3d 254, 2001 U.S. App.* Here Plaintiff satisfies the requirement that the employee's request must be sufficiently direct and specific, giving notice that he needed special accommodations. On at least four occasions, Plaintiff presented doctor's notes to Defendant indicating that he had a disability within the meaning of American Disabilities Act. (Exhibits A, B, D, and E)

Interactive process, after all, is the first step in a proper response to a disabled employee's request for reasonable accommodation. It is a means of ensuring that employers take steps to understand and address their employees' disabilities. *Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100*

The ADA's regulations state that it may be necessary for the covered entity [the employer] to initiate an informal, interactive process with the qualified individual [the employee] with a disability in need of the accommodation." 29 C.F.R. § 1630.2(o)(3) (2005). Thus, once the employer becomes aware of the disability of an employee, he is expected to engage in a meaningful dialogue with the employee to find the best means of accommodating that disability. *Id.* Under both the Americans with Disabilities Act of 1990 and Mass. Gen. Laws ch. 151B, it is the employee's initial request for an accommodation that triggers the employer's obligation to participate in the interactive process of determining one. *Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 772 N.E.2d 1054*

A sufficient request for accommodation by the plaintiff also triggers a duty on the part of the employer to engage in an interactive process with the employee to determine an appropriate accommodation. *Tobin v. Liberty Mutual Ins. Co., 433 F.3d 100, 108 (1st Cir. 2005)* The interactive process "requires a great deal of communication between the employee and employer." *Calero-Cerezo, 355 F.3d at 24*

The interactive process between employer and employee requires the good faith participation of both parties. *Phelps v. Optima Health, Inc., 251 F.3d 21, 28 (1st Cir. 2001).* "Liability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown." Id.

In this matter, Plaintiff's request for accommodation clearly triggers a duty on the part of the employer to engage in an interactive process with the employee to determine an appropriate accommodation. Defendant failed to engage in an interactive process with Plaintiff to determine appropriate accommodations. Defendant merely issued one letter dated December 23, 2003 after Plaintiff submitted two requests for reasonable accommodations. *(Exhibits A, B, and C)*

### C.    **Plaintiff Has Established A *Prima Facie* Case Of Retaliation.**

"To succeed on a claim of retaliation, 'the plaintiff must prove that he reasonably and in good faith believed that the employer was engaged in wrongful discrimination, that he acted reasonably in response to his belief, and that the employer's desire to retaliate against him was a determinative factor in its decision to terminate his employment." *Abramian v. Pres. & Fellows of Harvard College,* 432 Mass. 107, 121 (2000).

Plaintiffs claim for retaliation does not fail because he can show that he suffered an adverse employment action and a causal connection between the adverse employment action and the alleged retaliation. *See Hernandez-Torres v. Intercontinental Trading, Inc.,* 158 F.3d 43, 47 (1st Cir. 1998). Here, Plaintiff was harassed because of his gender by Patricia LaFore (female)

9

and an agent for Defendant.

The United States District Court for the District of Massachusetts joins the other jurisdictions (including every circuit court that has interpreted the definition of "**employer**" under 42 U.S.C.S. § 2000e(b) of Title VII of the Civil Rights Act of 1964 and the majority of District Courts in the United States Court of Appeals for the First Circuit ) that have concluded that Congress did not intend to impose individual liability upon **agents of an employer** under Title VII. The phrase "and any **agent** of such a person," was intended by Congress to establish traditional **respondeat superior liability.** That is, the phrase simply means that an **employer is liable** for acts of those **employees** acting within the scope of their employment, but does not extend liability beyond the **employer** to the individual. *Healy v. Henderson, 275 F. Supp. 2d 40, 2003 U.S. Dist*

Here, Patricia LaFore acted within the scope of her employment as department manger for Defendant. She acted within the scope of her employment when she denied Plaintiff's request for reasonable accommodation for his disability that falls within American Disabilities Act. (Amended Complaint ¶20)

### E. Plaintiff's Claim For "Intentional Infliction of Emotional Distress" is Not Barred by the Exclusivity Provision of the Workers' Compensation Act.

Defendant correctly states that a negligent infliction of emotional distress claim does not fit into the exception articulated for intentional torts and, therefore, is barred by the Massachusetts Workers' Compensation Act. However, Intentional torts which are "in no way within the scope of employment furthering the interests of the employer" are not barred by the Act because they are not an accepted risk of doing business. *O'Connell v. Chasdi, 400 Mass. 686, 511 N.E.2d 349, 351-52 (Mass. 1987); Morehouse v. Berkshire Gas Co., 989 F. Supp. 54,*

*65 (D. Mass. 1997)* When Defendant's agent Patricia LaFore acted maliciously by inflicting emotional distress, or knew or should have known that emotional distress upon Plaintiff was the likely result of her conduct she was in no way furthering he interests of Defendant employer. ( (Complaint ¶ 17 thru 20)

### F. Plaintiff Suffered Adverse Discriminatory Employment Action Discriminatory And Defendant's Reason For Its Action Were Pretextual.

The *prima facie* case for gender discrimination in the terms and conditions of employment has been stated as follows: 1) membership in a protected class; 2) satisfactory job performance; 3) an adverse employment action taken against the Plaintiff based on the protected characteristic; and 4) the discriminatory animus caused the decision to take the adverse employment action. *See Zhang v. Massachusetts Institute of Technology,* 46 Mass. App. Ct. 597, 601 (1999). Because Plaintiff has suffered no adverse employment action caused by discriminatory animus, this claim must fail. An "adverse employment action" includes "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees." *Hernandez-Torres v. Intercontinental Trading Inc., 158* F.3d 43 47 (1St Cir. 1998). Whether an employment action is "adverse" is judged by an objective standard. *See Marrero v. Goya of Puerto Rico, Inc.,* 304 F.3 d 7, 23 (₁5t Cir. 2002).

### III.    CONCLUSION

Plaintiff's Depressive Disorder NOS with features of anxiety and ADHD constitutes a permanent mental disability under the ADA because it substantially impairs his major life activity. Plaintiff had been seeing his physician for approximately four years.

Defendant's motion for summary judgment should be denied because plaintiff has shown that

11

defendant's purportedly legitimate, nondiscriminatory reason for the adverse employment action is really pretext for discrimination.

                    Respectfully submitted,
                    STEVE BOUTIN
                    Counsel for Plaintiff

                    /s/ Tammy Sharif_____
                    Tammy Sharif
                    Two Mattoon Street, Suite 2
                    Springfield, MA  01105
                    Telephone: 413.39.0200
                    Fax: 413.78.0801

Dated: October 17, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on this day October 18, 2006, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), including counsel for Defendant, Robert P. Joy, Joseph P. McConnell, Tracy Thomas Boland, MORGAN, BROWN & JOY, LLP, 200 State Street, Boston, Massachusetts 02109.