# In The United States District Court
# For The Western District of Massachusetts

| | |
|---|---|
| **Steve Boutin,** | **CIVIL ACTION NO.:** |
| **PLAINTIFF** | American Disabilities Act; Discrimination |
| | Under Title VII, Civil Rights Act of 1964; |
| **v.** | Hostile Work Environment; Retaliation, |
| | Punitive Damages; Trial by Jury |
| **HOME DEPOT U.S.A., INC.,** | |
| **DEFENDANT** | |

## COMPLAINT

TO THE HONORABLE COURT:

COMES NOW PLAINTIFF, through the undersigned attorney and respectfully allege and prays:

1. This is an action for compensatory and punitive damages for Defendant's
   violation of Plaintiff's federally protected rights under the Laws of the United
   States and the Laws of the Commonwealth of Massachusetts.

### JURISDICTION AND VENUE

2. Jurisdiction of this action is founded upon Section 107 (A) of the American
   Disabilities Act (hereinafter "ADA"), 42 U.S.C. 12101, et seq. which incorporates
   by reference Section 706 of Title VII of the Civil Rights Act of 1964, 42 U.S.C.
   Sec. 2000e-5, as amended.

3. Venue of this action is proper under 28 USC Sec. 1391 (b). Supplemental
   jurisdiction (28 USC Sec. 1367) is invoked for the claims arising under the

Case 3:05-cv-30162-MAP    Document 16-6    Filed 09/19/2006    Page 2 of 8

violation of following Massachusetts Laws; M.G.L. 151B, §4(1), M.G.L. c. 151B § 4(4)). M.G.L. c. 93, ' 102 (equal rights act), sex discrimination in violation M.G.L. c. 15 1 B, ' 4(4), and retaliation in violation of ' 4(4A) for exercising his rights under that provision.

4.   All conditions precedent to jurisdiction under Section 706 of Title VII, 42 USC Section 2000e-5(f)(3) have occurred or been complied with:

    a.   A charge of employment discrimination on the basis of disability discrimination was timely filed with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the commission of the unlawful employment practices alleged herein.

    b.   A Notice of Right to Sue was sent by the EEOC, dated April 6, 2005. The Notice was received by Plaintiff on or about April 8, 2005.

    c.   This Complaint has been filed within 90 days of receipt of the EEOC's Notice of Right to Sue.

## PARTIES

5.   Plaintiff Steve Boutin (hereinafter Boutin or Plaintiff) is an adult and a resident of Chicopee, Massachusetts and a citizen of the United States.

6.   Defendant, Home Depot U.S.A., Inc. (hereinafter "Home Depot" or "Defendant") is upon information and belief a corporation and/or legal entity organized under the Laws of the Commonwealth of Massachusetts.

7. Defendant is corporation and/or legal entity subject to the laws of the United States and of the Commonwealth of Massachusetts, including American with Disabilities Act, 42 USC 12101-13, et seq.

8. Defendant is an "employer" within the meaning of 42 USC 12111, employing 15 or more employees for each working day, in each of 20 or more calendar weeks in the current and preceding calendar year, and engaged in an industry affecting commerce.

9. Defendant is a "person" within the meaning of Section 107 (7) of the ADA, 42 USC Section 12111 (7), and Section 701 of the Title VII of the Civil Rights Act of 1964, 42 USC Sec. 2000e.

10. Defendant is engaged in an industry that affects commerce within the meaning of Section 101 (7) of the ADA, 42 USC Sec. 12111 (7), and Section 701 of the Civil Rights Act of 1964, 42 USC Sec. 2000e.

## FACTS

11. Plaintiff is a full-time single parent with full custody.

12. Plaintiff suffers from depression and anxiety for which he is being treated by Dr. Schuyler Whitman.

13. Plaintiff was hired as a Receiving Associate at Store #2662 in West Springfield, Massachusetts on or about April 1, 1991.

14. Upon hire, Plaintiff was assured by Defendant that Plaintiff would always have a schedule that would accommodate his child care needs.

15. Mr. Boutin worked in several different departments and positions throughout his employment with Defendant.

16. Plaintiff's job performance has always been satisfactory.

17. On several occasions during the year 2003, Plaintiff approached his department manager, Patricia LeFore, to request a change in his schedule to accommodate his child-care issues.

18. Mr. Boutin explained to Ms. LaFore (female) and later to store manager, Chris Catalina (female), that he needed to adjust his hours to permit him to care for his 11-year old daughter after school.

19. Plaintiff further explained and formally informed Defendant that Plaintiff is disabled due to depression and anxiety which is exacerbated by Home Depot's schedule restrictions and his inability to care for his daughter after school.

20. Plaintiff had previously submitted a recommendation from his treating physician, Dr. Whitman, dated June 25, 2003, confirming his ongoing treatment for depression and anxiety and his need for schedule change.

21. Plaintiff's treating physician, Dr. Whitman, explained that, without the accommodation sought by Plaintiff, his anxiety and depression would be further exacerbated.

22. Rather than accommodate Plaintiff's request for a specific schedule, Ms. LaFore summarily denied the request and threatened to place Plaintiff on a rotating schedule with no set hours.

23. Ms. LaFore's conduct merely served to exacerbate Mr. Boutin's ongoing depression and anxiety.

24. Ms. LaFore intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of her conduct.

25. On or about July 15, 2003, Plaintiff filed a charge with the Commission Against Discrimination for disability and gender discrimination.

26. At the time of Plaintiff's request for a work schedule change, Defendant had been informed of Plaintiff's disability within the meaning of Section 107 (7) of the ADA, 42 USC Section 12111 (7).

27. Plaintiff's immediate supervisor, Dory Farrington, granted Plaintiff's schedule change.

28. Plaintiff then informed the department manager, Patricia LeFore, that Farrington granted his request for a schedule change.

29. Ms. LeFore, later informed Plaintiff that his request for a schedule change will be denied.

30. Upon the news that that Plaintiff's request for a schedule change was denied, his medical condition became exasperated.

31. Plaintiff is under the care of a doctor for his disability. Upon Plaintiff's visit with his doctor, the doctor suggested that he change his working hours in order to help stabilize his anxiety levels

32. Plaintiff was subjected to discrimination because of his disability (Depression and Anxiety disorder) and gender (male)." Plaintiff was subjected to illegal discrimination, specifically, denied scheduling accommodations for childcare issues, while female associates are accommodated.

33. Plaintiff was denied reasonable accommodation despite his disability (Depression and Anxiety disorder).

## FIRST CAUSE OF ACTION
### Violation of American with Disabilities Act)

34. Plaintiff repeats and re-alleges each and every preceding allegation as if fully set herein.

35. Boutin is, and was, at the time of his claim of discrimination an individual with a "disability" within the meaning of Section 3 (2) of the American with Disabilities Act, 42 USC Sec. 12102 (2), since he has been retaliated against for asserting his constitutional rights.

36. Boutin is a "qualified individual with a disability" as that term is defined in section 101(8) of the ADA. More specifically, Boutin is an individual with a disability who could perform the essential function of his job at the time he employment discrimination claim.

37. As a direct and proximate result of the violations of Boutin's rights by Defendant, he has suffered and continues to suffer depression, and other substantial damages such as physical and emotional pain, distress, and mental anguish, humiliation and other non-pecuniary losses.

## SECOND CAUSE OF ACTION
### (Unlawful Retaliation in violation of G.L. c. 151B § 4(4))

38. Defendant retaliated against Plaintiff by verbally harassing Plaintiff.

39. Defendant retaliated against Plaintiff for having engaged in protected activity

when he reasonably and in good faith believed that he was discriminated against and acted reasonably in response to that belief by filing a claim of discrimination with the Massachusetts Commission Against Discrimination (MCAD) Commission because of his sex (male) and "Disability" as that term is defined in section 101(8) of the ADA.

40. These adverse actions occurred within a time period reasonably close to the protected activity such that retaliation can be inferred.

41. Plaintiff repeats and re-alleges each and every preceding allegation as if fully set herein.

42. Plaintiff has suffered mental anguishes and economical hardships as a consequence of Defendants unlawful harassment.

Plaintiff requests the judgment of this Court against Defendants as follows.

    a. Grant Plaintiff the right to a jury trial.

    b. Find and hold that Plaintiff suffered from Defendants' acts of discrimination on the basis of gender and disability as that term is defined in section 101(8) of the ADA .

    c. Award Plaintiff compensatory damages under ADA for the acts of discrimination as well as for the depression, physical and emotional pain, distress, mental anguish, humiliation and other non-pecuniary losses.

    d. Award Plaintiff punitive Damages under ADA.

    e. Order the Defendant to pay Plaintiff compensatory damages for depression, physical and emotional pain, distress, mental anguish, loss of

enjoyment of life, humiliation and other nonpecuniary losses, due to

Defendants discriminatory acts.

WHEREFORE, it is respectfully requested from this Honorable Court to consider and

grant this Complaint, awarding Plaintiff the aforementioned relief, plus prejudgment and

post-judgment interest, all legal costs and attorney fees. Such further relief as the Court

may deem just and proper.

**PLAINTIFF REQUEST A JURY TRIAL**

**DATE: JULY 7, 2005**

Respectfully submitted,

STEVE BOUTIN
BY HIS ATTORNEY

Tammy Sharif, Esq.
BBO# 659134
The Historical Walker Building
1242 Main Street, Suite 314
Springfield, MA 01103
413-439-0200

# ServiceNet

*Integrated Human Services*

May 13, 2002

To Home Depot
W. Springfield, Ma

To Whom it may concern,

    Mr Boutin is a client of mine who is being treated at this clinic for depression and anxiety. He is also trying to raise his 9 year old daughter as well. I feel that changing Mr Boutins schedule to include evenings and nights would be very detrimental to his mental status, and could cause a setback in his treatment. I recommend Mr Boutin stay on his current schedule for the foreseeable future.

    Please call if you have further questions.

Sincerely,

Schuyler Whitman M.D.

129 King Street • Northampton, MA 01060 • 413.585.1300 • Fax 413.582.4252 • www.servicenetinc.org      Susan L. Stubbs, C.E.O.

 Recycled Paper

05-13-02 15:18   TO:HOME DEPOT W SPRINGFIELD MA      FROM:413 582 02 i5          P02

4

# ServiceNet

*Integrated Human Services*

June 25, 2003

To Whom It May Concern:

Steve Bortm is a patient I have been treating for depression and anxiety. He is currently prescribed two different medications. He is a single parent.

I feel that changing his schedule would impair his ability to cope. I recommend that he remain on his current schedule for the foreseeable future

Sincerely,

Schuyler Whitman M

SCHUYLER WHITMAN, M





**179 Dagget Dr. • W. Springfield, MA 01089**
**(413) 731-9700**

December 23, 2003

Hand Delivery and U.S. Mail

     Re: Schedule Change Request

Dear Steve:

     We would like to address your scheduling concerns; however, we need to obtain information regarding your restrictions from your doctor. During your employment, you have requested several changes to your schedule. As you are aware, full-time employees are expected to have fully flexible availability, to include evenings and weekends. To date, we have accommodated your requests for a set schedule. Although you are currently working a set schedule from 8:30 a.m. to 5:30 p.m., Monday through Friday, you have requested another schedule change and would now like to work from 7:30 a.m. to 4:30 p.m., Monday through Friday.

     We need clarification from your doctor as to why it is medically necessary for you to work this particular schedule from 7:30 a.m. to 4:30 p.m. in order to perform the essential functions of your job as a Phone Center Associate. Enclosed for your doctor's review is a copy of your job description (Phone Center Associate).

     In an effort to address the staffing and scheduling needs of the Phone Center, we also need for your doctor to clarify how long your doctor anticipates that you will need to work this particular set schedule and if your doctor anticipates any schedule changes in the future and why.

     Thanks for your cooperation.

Sincerely,

*Marcia A. Neves*

Marcia A. Neves
Human Resources Manager

Enclosure



7



*Integrated Human Services*

March 26, 2004

To Whom It May Concern:

Steve Boutin is a patient here at ServiceNet Medication Clinic and is being treated for depression and anxiety. Steve is currently prescribed medications to help alleviate symptoms. He is also a single parent and responsible for his 10 year old daughter.

It is important for his ongoing mental health that known stressors be reduced as much as possible. One such stressor is when there is a conflict between his work hours and the hours he needs to care for his daughter. Such a stressor can increase his anxiety, impair his ability to cope, and be detrimental to his mental health.

I recommend that Steve's work be scheduled so that he is able to be home during the hours which allow him to best care for and supervise his daughter. This arrangement would alleviate undue stress and support this clients' mental health.

Please call if you have further questions.

Sincerely,

William White, M.D.
Signing for Schuyler Whitman, M.D.
Staff Psychiatrist

WW/lmk



*Integrated Human Service Systems*

May 17, 2004

RE:    BOUTIN, Steve

To Whom It May Concern:

Steve Boutin is a patient currently being treated at the ServiceNet Medication Clinic for depression and anxiety.

A letter was written on March 26, 2004 recommending that his work be scheduled so that he would be able to be home during the hours he needed to care for and supervise his daughter.

He now reports that he also has to help care for his 13-year old son who has multiple developmental disabilities. He is requesting a work schedule of Monday through Friday, 8:30 a.m. to 4:30 p.m. for the foreseeable future. *(i.e WEEKDAYS, No WEEKENDS) SW*

I recommend that his work be scheduled such that he can be home for child care. This would alleviate stress and support his mental health.

Sincerely,

Schuyler Whitman, M.D.
Staff Psychiatrist

SW/mlj
s225733.000

*129 King Street • Northampton, MA 01060 • 413.585.1300 • Fax 413.582.4252 • www.servicenetinc.org • Susan L. Stubbs, C.E.O.*

Recycled Paper

In The United States District Court
For The Western District of Massachusetts

FILED
IN CLERK'S OFFICE

7005 OCT 25   A 10: 47

U.S. DISTRICT COURT
DIST OF MASS.

Steve Boutin,

**PLAINTIFF**

v.

**HOME DEPOT U.S.A., INC.,**
**DEFENDANT**

CIVIL ACTION
American Disabilities Act; Discrimination
Under Title VII, Civil Rights Act of 1964;
Hostile Work Environment; Retaliation,
Punitive Damages; Trial by Jury

## AMENDED COMPLAINT

### TO THE HONORABLE COURT:

Pursuant to Federal Rule of Civil Procedure 15(a), the plaintiff hereby amends his Complaint as
a matter of course, prior to the service of a responsive pleading, as to read follows:

1. This is an action for compensatory and punitive damages for Defendant's violation of

   Plaintiff's federally protected rights under the Laws of the United States and the Laws of

   the Commonwealth of Massachusetts.

### JURISDICTION AND VENUE

2. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. §§1331,

   1343 (3) & (4) and 42 U.S.C. §§1983 and 1988 as this case arises under the equal

   protection clause of the Fourteenth Amendment to the United States Constitution. As

   plaintiffs' state law claims derive from the same nucleus of operative facts as his federal

   claims, this Court has pendent jurisdiction pursuant to 28 U.S.C. sec. 1367.

3. At all times relevant hereto, Defendant Home Depot, Inc., a corporation licensed and doing business in Massachusetts, is and at all times mentioned herein was an employer within the meaning of the Americans with Disabilities Act (ADA) and the Family Medical Leave Act (FMLA).

4. This Court has jurisdiction over this matter as this matter involves a federal question based upon the Americans With Disabilities Act of 1990 and the Family Medical Leave Act.

5. Jurisdiction of this action is founded upon Section 107 (A) of the American Disabilities Act (hereinafter "ADA"), 42 U.S.C. 12101, et seq. which incorporates by reference Section 706 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-5, as amended.

6. Venue of this action is proper under 28 USC Sec. 1391 (b). Supplemental jurisdiction (28 USC Sec. 1367) is invoked for the claims arising under the violation of following Massachusetts Laws; M.G.L. 151B, §4(1), M.G.L. c. 151B § 4(4)). M.G.L. c. 93, ' 102 (equal rights act), sex discrimination in violation M.G.L. c. 15 1 B, ' 4(4), and retaliation in violation of ' 4(4A) for exercising his rights under that provision.

7. All conditions precedent to jurisdiction under Section 706 of Title VII, 42 USC Section 2000e-5(f)(3) have occurred or been complied with:

   a. A charge of employment discrimination on the basis of disability discrimination was timely filed with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the commission of the unlawful employment practices alleged herein.

   b. A Notice of Right to Sue was sent by the EEOC, dated April 6, 2005. The Notice was received by Plaintiff on or about April 8, 2005.

    c. This Complaint has been filed within 90 days of receipt of the EEOC's Notice of

      Right to Sue.

## PARTIES

8. At all times relevant hereto, Plaintiff, Steve Boutin (hereinafter Boutin or Plaintiff) is an

    adult, has resided in Chicopee, Massachusetts and is a citizen of the United States .

9. Defendant, Home Depot U.S.A., Inc. (hereinafter "Home Depot" or "Defendant") is upon

    information and belief a corporation and/or legal entity organized under the Laws of the

    Commonwealth of Massachusetts.

10. Defendant is corporation and/or legal entity subject to the laws of the United States and

    of the Commonwealth of Massachusetts, including American with Disabilities Act, 42

    USC 12101-13, et seq.

11. Defendant is an "employer" within the meaning of 42 USC 12111, employing 15 or more

    employees for each working day, in each of 20 or more calendar weeks in the current and

    preceding calendar year, and engaged in an industry affecting commerce.

12. Defendant is a "person" within the meaning of Section 107 (7) of the ADA, 42 USC

    Section 12111 (7), and Section 701 of the Title VII of the Civil Rights Act of 1964, 42

    USC Sec. 2000e.

13. Defendant is engaged in an industry that affects commerce within the meaning of Section

    101 (7) of the ADA, 42 USC Sec. 12111 (7), and Section 701 of the Civil Rights Act of

    1964, 42 USC Sec. 2000e.

## FACTS

14. Plaintiff is a full-time single parent with full custody.

15. Plaintiff suffers from depression and anxiety for which he is being treated by Dr. Schuyler Whitman.

16. Plaintiff was hired as a Receiving Associate at Store #2662 in West Springfield, Massachusetts on or about April 1, 1991.

17. Upon hire, Plaintiff was assured by Defendant that Plaintiff would always have a schedule that would accommodate his child care needs.

18. Mr. Boutin worked in several different departments and positions throughout his employment with Defendant.

19. Plaintiff's job performance has always been satisfactory.

20. On several occasions during the year 2003, Plaintiff approached his department manager, Patricia LeFore, to request a change in his schedule to accommodate his child-care issues.

21. Mr. Boutin explained to Ms. LaFore (female) and later to store manager, Chris Catalina (male), that he needed to adjust his hours to permit him to care for his 11-year old daughter after school.

22. Plaintiff further explained and formally informed Defendant that Plaintiff is disabled due to depression and anxiety which is exacerbated by Home Depot's schedule restrictions and his inability to care for his daughter after school.

23. Plaintiff had previously submitted a recommendation from his treating physician, Dr. Whitman, dated June 25, 2003, confirming his ongoing treatment for depression and anxiety and his need for schedule change.

24. Plaintiff's treating physician, Dr. Whitman, explained that, without the accommodation sought by Plaintiff, his anxiety and depression would be further exacerbated.

25. Rather than accommodate Plaintiff's request for a specific schedule, Ms. LaFore summarily denied the request and threatened to place Plaintiff on a rotating schedule with no set hours.

26. Plaintiff at all times met all legitimate job expectations of Defendant employer.

27. Ms. LaFore's conduct merely served to exacerbate Mr. Boutin's ongoing depression and anxiety.

28. Ms. LaFore intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of her conduct.

29. On or about July 15, 2003, Plaintiff filed a charge with the Commission Against Discrimination for disability and gender discrimination.

30. At the time of Plaintiff's request for a work schedule change, Defendant had been informed of Plaintiff's disability within the meaning of Section 107 (7) of the ADA, 42 USC Section 12111 (7).

31. Plaintiff's immediate supervisor, Dory Farrington, granted Plaintiff's schedule change.

32. Plaintiff then informed the department manager, Patricia LeFore, that Farrington granted his request for a schedule change.

33. Ms. LeFore, later informed Plaintiff that his request for a schedule change will be denied.

34. Upon the news that that Plaintiff's request for a schedule change was denied, his medical condition became exasperated.

35. Plaintiff is under the care of a doctor for his disability. Upon Plaintiff's visit with his doctor, the doctor suggested that he change his working hours in order to help stabilize his anxiety levels

36. Plaintiff was subjected to discrimination because of his disability (Depression and Anxiety disorder) and gender (male)." Plaintiff was subjected to illegal discrimination, specifically, denied scheduling accommodations for childcare issues, while female associates are accommodated.

37. Plaintiff was denied reasonable accommodation despite his disability (Depression and Anxiety disorder).

## FIRST CAUSE OF ACTION
(Violation of American with Disabilities Act)

38. Plaintiff repeats and re-alleges each and every preceding allegation as if fully set herein.

39. Boutin is, and was, at the time of his claim of discrimination an individual with a "disability" within the meaning of Section 3 (2) of the American with Disabilities Act, 42 USC Sec. 12102 (2), since he has been retaliated against for asserting his constitutional rights.

40. Boutin is a "qualified individual with a disability" as that term is defined in section 101(8) of the ADA. More specifically, Boutin is an individual with a disability who could perform the essential function of his job at the time he employment discrimination claim.

41. As a direct and proximate result of the violations of Boutin's rights by Defendant, he has suffered and continues to suffer depression, and other substantial damages such as physical and emotional pain, distress, and mental anguish, humiliation and other non-pecuniary losses.

## SECOND CAUSE OF ACTION
(Unlawful Retaliation in violation of G.L. c. 151B § 4(4))

42. Plaintiff repeats and re-alleges each and every preceding allegation as if fully set herein.

43. Defendant retaliated against Plaintiff by verbally harassing Plaintiff.

44. Defendant retaliated against Plaintiff for having engaged in protected activity when he reasonably and in good faith believed that he was discriminated against and acted reasonably in response to that belief by filing a claim of discrimination with the Massachusetts Commission Against Discrimination (MCAD) Commission because of his sex (male) and "Disability" as that term is defined in section 101(8) of the ADA.

45. Plaintiff has suffered mental anguishes and economical hardships as a consequence of Defendants unlawful harassment.

## THIRD CAUSE OF ACTION
(Negligent or Intentional Infliction of Emotional Distress)

46. Plaintiff repeats and re-alleges each and every preceding allegation as if fully set herein.

47. Defendants' actions described herein were intentional and inflicted upon Plaintiff severe mental and emotional distress.

48. As a result of Defendants' actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal 1

## FOURTH CAUSE OF ACTION
(Gender Discrimination in Violation of M.G.L. c. 151B)

49. Plaintiff repeats and re-alleges each and every preceding allegation as if fully set herein.

50. Plaintiff was a male and fully qualified for his position at all relevant times.

51. During his employment with Defendant, Plaintiff is treated differently than similarly situated female employees.

52. Numerous female employees of Defendant employer have been afforded the exact same accommodations sought by Plaintiff.

53. During his employment with Defendant, Plaintiff was harassed because of his gender.

54. By discriminating against plaintiff in the terms and conditions of his employment, defendants have subjected plaintiff to sex discrimination in violation of the Fourteenth Amendment.

55. Defendant's intentional, willful, and malicious conduct and wanton and reckless disregard of Plaintiff's rights proximately caused Plaintiff to suffer damages and Plaintiff is entitled to judgment and damages in an amount to be proven at trial.

## PLAINTIFF REQUEST A JURY TRIAL

Plaintiff requests the judgment of this Court against Defendants as follows.

    a. Grant Plaintiff the right to a jury trial.

    b. Find and hold that Plaintiff suffered from Defendants' acts of discrimination on the basis of gender and disability as that term is defined in section 101(8) of the ADA.

    c. Award Plaintiff compensatory damages under ADA for the acts of discrimination as well as for the depression, physical and emotional pain, distress, mental anguish, humiliation and other non-pecuniary losses.

    d. Award Plaintiff punitive Damages under ADA.

e. Order the Defendant to pay Plaintiff compensatory damages for depression,
physical and emotional pain, distress, mental anguish, loss of enjoyment of life,
humiliation and other nonpecuniary losses, due to Defendants discriminatory acts.

WHEREFORE, it is respectfully requested from this Honorable Court to consider and grant this
Complaint, awarding Plaintiff the aforementioned relief, plus prejudgment and post-judgment
interest, all legal costs and attorney fees. Such further relief as the Court may deem just and
proper.

**PLAINTIFF REQUEST A JURY TRIAL**

**DATE: OCTOBER 20, 2005**

Respectfully submitted,

STEVE BOUTIN
BY HIS ATTORNEY

Tammy Sharif, Esq.
BBO# 659134
The Historical Walker Building
1242 Main Street, Suite 314
Springfield, MA 01103

413-439-0200

Case 3:05-cv-30162-MAP    Document 16-7    Filed 09/19/2006    Page 10 of 10

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the within Plaintiff's Amended Complaint was this day served upon all parties to this action by summons.

SIGNED under the pains and penalties of perjury.

Dated: October 20, 2005

Respectfully submitted,
Steve Boutin
By his Attorney

Tammy Sharif, Esq., BBO# 659134
The Walker Building
1242 Main Street, Suite 314
Springfield, MA 01103
Ph. (413)439-0200 / FAX 413-785-0801

## SERVICENET MED CLINIC

Steve Boutin                          #19407 (22)                    Schuyler Whitman, M.D.

11/17/03                                              The patient was seen for 15 minutes.

Data: This is a 47 year old white male who comes in today for medication follow up.

He says he has been doing well. He is hoping to transfer to a different work site. He feels that the medication is helping him. He is not feeling overly tired.

Objective: He is casually dressed, neatly groomed. He is pleasant and cooperative. Mood and affect are euthymic. There is no evidence of psychotic thinking or hallucinations. There is no suicidal ideation.

Diagnosis:

AXIS I:        Depressive Disorder NOS with features of anxiety (311).
               ADHD.
AXIS II:       No diagnosis.
AXIS III:      Environmental allergies.

Assessment: Stable.

Plan: Continue current medications:

1.       Wellbutrin SR 200 mg 1 tablet in the morning, #30 with 3 refills.
2.       Valium 5 mg 1 tablet hs, PRN, #30 with 3 refills.

He will be seen for follow up on Monday, March 1, 2004 at 1:00 p.m. in Chicopee.

Schuyler Whitman, M.D./mcm

## SERVICENET MED CLINIC

Steve Boutin                    #19407 (22)                    Schuyler Whitman, M.D.

8/4/03                                              The patient was seen for 25 minutes.

<u>Data:</u> This is a 47 year old white male who comes in today for medication follow up.

At his last visit he was started on a trial of Valium at bedtime as he thought he had been on it in the past and that it had been very helpful to help him unwind at night and sleep and be less anxious during the day.

Today he says it is very helpful. He is able to sleep well on 5 mg and feels more relaxed during the day. He tried taking 2 5 mg tablets but found that he felt headachy and as if he had a hangover so he went back to one.

<u>Objective:</u> He is casually dressed, neatly groomed. He is pleasant and cooperative. His mood and affect are euthymic. There is no evidence of psychotic thinking or hallucinations. There is no suicidal ideation.

<u>Diagnosis:</u>

AXIS I:      Depressive Disorder NOS with features of anxiety (311).
             ADHD.
AXIS II:     No diagnosis.
AXIS III:    Celiac disease, environmental allergies.

<u>Assessment:</u> Doing well. We again reviewed risks and benefits of Valium and that when used consistently it may accumulate so that if he finds himself feeling somewhat depressed or tired he should consider that it might be the Valium and he might need to go off it. Also he may develop a tolerance to it if he continues with it daily.

<u>Plan:</u> Continue current medications:

1.    Wellbutrin SR 200 mg 1 tablet in the morning, #30 with 3 refills.
2.    Valium 5 mg 1 tablet hs PRN, #30 with 3 refills.

He will be seen for follow up on Monday, November 17, 2003 at 1:30 p.m. in Chicopee.

Schuyler Whitman, M.D./mcm

## SERVICENET MED CLINIC

BOUTIN, Steve                     19407                         S. Whitman, M.D.
5/12/03                           (22)                          Patient seen for 30 mins.

Data: This is a 47-year old, white male who comes in today for medication follow-up.

At his last visit, he was started on a trial of Strattera. However he says he took it for one day and felt chilled and sweaty and did not want to continue it any longer. He went back on the Wellbutrin 200 mg in the morning and the Wellbutrin helps to "take the edge off". He does not want to try the Strattera again even at a lower dose.

He says since all of the medications we have tried, except for the Wellbutrin, have not been helpful, he wonders about trying something completely different. He said one time he was given some kind of a sedative before medical procedure and it helped him to sleep and helped him to feel better for days. He didn't feel anxious. He wasn't tripping over his own words and he felt relaxed. He's not sure what it was.

Objective: He's casually dressed, neatly groomed. He's pleasant and cooperative. Mood and affect are mildly anxious with no evidence of psychotic thinking or hallucinations. There is no suicidal ideation. He denies any history of alcohol or substance abuse.

| | | |
|---|---|---|
| AXIS I: | 1. | Depressive Disorder, NOS with Features of Anxiety (311). |
| | 2. | ADHD. |
| AXIS II: | No diagnosis | |
| AXIS III: | Celiac disease; environmental allergies. | |

Assessment: I discussed with him that probably what he received was a benzodiazepine such as Valium, Klonopin, or Ativan. I discussed risks and benefits of these medications including that they should not be used with alcohol, that on the long-term they may possibly affect memory and be habit-forming. However on review he appears to have done so much better as he describes it, that I think it is worth a trial as long as he is aware of the risks. We discussed alternatives. I will give him Valium to take at h.s. which should last through the next day and he may not need to take every day.

Plan:

1.    Continue Wellbutrin, which he has resumed. Wellbutrin SR 200 mg one tab in the AM, #30, x3).
2.    Trial of Valium 5 mg, one to two tabs, h.s. prn, #60, x3.

He will be seen again on Monday, 8/4/03 at 1:00 p.m. in Chicopee.

Schuyler Whitman, M.D./mlj

**SERVICENET MED CLINIC**

Steve Boutin                    #19407 (22)                    Schuyler Whitman, M.D.

2/25/03                                        The patient was seen for 20 minutes.

Data: This is a 46 year old white male who comes in today for medication follow up.

He continues on the Wellbutrin and is doing okay but because of sexual side effects wants to know if there is something else that would be helpful. He says he tried the Remeron but it made him feel so awful that he couldn't even go to work one day. He went off it after three or four days.

Objective: He is casually dressed and neatly groomed. He is pleasant and cooperative. His mood and affect are euthymic. There is no evidence of psychotic thinking or hallucinations. There is no suicidal ideation.

Diagnosis:

AXIS I:        Depressive Disorder NOS with features of anxiety (311).
              ADHD.
AXIS II:       No diagnosis.
AXIS III:      Celiac disease; environmental allergies.

We discussed Strattera. I advised him that it is a new medication and so I don't have experience with it. Nevertheless it is indicated for ADHD. It is not known to have sexual side effects. Risks, benefits and side effects were discussed. He would like to try it.

Plan: Trial of Strattera. I recommend that he discontinue Wellbutrin. The following prescription was called in:

1.      Strattera 40 mg 1 tablet for 3 days, then increase to 2 tablets daily, #60 with 1 refill.

This was called into the Stop & Shop pharmacy in Chicopee (593-3999). He was also given a prescription for:

2.      Strattera 40 mg 2 tablets daily, #60 with no refills for when those prescriptions run out.

He will be seen again on Monday, May 12, 2003 at 1:00 p.m. He should call the clinic in the meantime if there are any questions or problems.

Schuyler Whitman, M.D./mcm

Add: 2/26/03
TIL to pt. to discuss that there are some reported sexual
side effects with Strattera in clinical trials Pt. not home -
. " left a few ... S. W. M.D.

## SERVICENET MED CLINIC

Steve Boutin                    #19407 (22)                    Schuyler Whitman, M.D.

12/10/02                                    The patient was seen for 20 minutes.

<u>Data:</u> This is a 46 year old white male who comes in today for medication follow up.

He says that on the increased Wellbutrin he still had sexual side effects. He lowered it to once a day and he is having much fewer sexual side effects. He is not depressed. He is not anxious but he still has some trouble focusing. He wants to discuss trying something else in addition to the Wellbutrin that doesn't have sexual side effects.

<u>Objective:</u> He is casually dressed and neatly groomed. He is pleasant and cooperative. His mood and affect are euthymic. There is no evidence of psychotic thinking or hallucinations. There is no suicidal ideation. He has some trouble sleeping. His appetite is okay. He describes some continuing problems with focusing and memory and wants to try another antidepressant to boost the effects of Wellbutrin, which he cannot tolerate the higher dose.

<u>Diagnosis:</u>

AXIS I:        Depressive Disorder NOS with features of anxiety (311).
               ADHD.
AXIS II:       No diagnosis.
AXIS III:      Celiac Disease; environmental allergies.

Having sexual side effects on 400 mg of Wellbutrin. He went back down to 200 mg a day requesting augmentation.

I had already given him a trial of Serzone, which he could not tolerate. I discussed Remeron with him, which should not have sexual side effects and also can help with sleep and may be complimentary to the Wellbutrin. He would like to try it. As he recalls he was on it sometime in the distant past but he cannot recall how he felt on it and we do not have records about it but he is not aware of any major problem on it.

<u>Plan:</u> Decrease Wellbutrin SR 200 mg 1 tablet in the morning, #30 with 2 refills. Trial of Remeron 15 mg 1 tablet hs, #30 with 2 refills. He will be seen again on February 25, 2003 at 1:00 p.m. in Chicopee. He will contact the clinic in the meantime if there are any questions or problems.

next appointment
2/25/03 @ 1

_____
Schuyler Whitman, M.D./mcm

### SERVICENET MED CLINIC

Steven Boutin                              19407                    Schuyler Whitman, M.D.
                                                                              Work type 22.

9/25/02                                                      This patient was seen for 20 minutes.

Data: This is a 46 year old white male who comes today for medication follow up.

At his last visit he was started on a trial of Serzone. He says he took it for about three weeks but it made him feel the way he felt before he felt before he started on the Wellbutrin and he decided to go off it. He continued on the Wellbutrin 200 mg in the morning and tried taking a second dose at noon and he has not had the side effect of urinary frequency that he had before. He does feel that the Wellbutrin really helps. He is calmer. He is able to think and speak much more clearly.

Objective: He is casually dressed and neatly groomed. He is pleasant and cooperative. Mood and affect are euthymic. There is no evidence of psychotic thinking or hallucinations. There is no suicidal ideation. He is sleeping okay. Appetite is good. There is no more urinary frequency.

He requests a prescription for Allegra because he tried a friend's Allegra and it helped him with his allergies.

Diagnosis:

| AXIS I: | Depressive disorder NOS with features of anxiety (311). |
|---------|---------------------------------------------------------|
|         | ADHD. |
| AXIS II: | No diagnosis. |
| AXIS III: | Celiac disease; environmental allergies. |

Assessment: Could not tolerate the Serzone. Doing well on Wellbutrin 400 mg a day. I recommend he continue that. I advised him that he should see his PCP ~~for evaluation~~ for evaluation of allergies and appropriate therapy.

Plan: Discontinue Serzone as he is not taking it. Increase Wellbutrin which he has already increased on his own. He was given the following new prescriptions:

1)     Wellbutrin SR 200 mg, one tablet bid, #60, with two refills.

He will be seen again in two months for follow up. His next appointment is on Tuesday, December 10, 2002, at 1:00 p.m. in Chicopee.

Schuyler Whitman, M.D./kmg

<u>SERVICENET MED CLINIC</u>

Steve Boutin                          19407                     Schuyler Whitman, M.D.
                                                               Work type 22.

7/24/02                                          This patient was seen for 25 minutes.

<u>Data:</u> This is a 46 year old, white male who comes today for medication follow up.  Since the patient's last visit on in May he had called complaining that the Effexor made him feel dizzy, weak and tired with a poor appetite and sexual side effects. He wanted to go off of it and did.

Remeron was then recommended but he says that he had thought he had been on it in the past and would wait to see me. He would continue on one Wellbutrin in the morning as he felt significantly better on that and urinary frequency had decreased so that it was tolerable.

Today he says that he really notices when he doesn't take the Wellbutrin. It helps him to feel calm and not get as angry and irritated at things.

He wants to know if there is anything else that could possibly help.

<u>Objective:</u> He is casually dressed and neatly groomed.  He is pleasant and cooperative.  Mood he describes as better.  Affect is moderate range.  There is no evidence of psychotic thinking or hallucinations.  There is no suicidal ideation. He feels better taking one Wellbutrin in the morning and still has to urinate more frequently then when he is not on Wellbutrin but it is not intolerable.

Of note is that we sent for records from his treatment at Holyoke Hospital but they said they could find none. He will check into that.

<u>Diagnosis:</u>

AXIS I:         Depressive disorder NOS with features of anxiety (311).
                ADHD.
AXIS II:        Diagnosis deferred.
AXIS III:       Celiac disease.

<u>Assessment:</u> As he is responding well to Wellbutrin once a day I suggest going up to the 200 mg pills to see if he can get a better response without more side effects.  He is agreeable.  He also says that he would be willing to try the Remeron because he really does not remember his response to it.  I also discussed with him alternatives such as an SSRI all of which have potential side effects and Serzone which does not have sexual side effects but usually has to be titrated up slowly because of other side effects and does have the rare possibility of an idiosyncratic hepatitis, even possibly leading to liver failure.

He is aware of the risks with Serzone and nevertheless would like to try it.

Steve Boutin, page 2                        19407                    Schuyler Whitman, M.D.
7/24/02

Plan:

1)    Increase Wellbutrin SR to 200 mg, one tablet in the morning, #30, with two refills.
2)    Serzone 100 mg, one half tab bid x 5 days, then one tablet bid x 1 week, then two tablets
       bid, #120, with two refills.   Signs and symptoms of liver problems such as nausea,
       vomiting, abdominal pain, malaise were discussed with him and he will contact the clinic
       if there are any problems and stop the medication.

He will be seen again in two months for follow up. His next appointment is Wednesday,
September 25, 2002, at 1:30 p.m.

Schuyler Whitman, M.D./kmg
S223560.000

SERVICENET MED CLINIC

Steve Boutin                                    19407                    Schuyler Whitman, M.D.
                                                                        Work type 22.

5/29/02                                              This patient was seen for 25 minutes.

Data: This is a 45 year old white male who comes today for medication follow up.

He says he tried the Adderall for a week or two but stopped it because it just made him feel too
on edge. He is glad he tried it but he doesn't want to continue it. He says that after he went off
the Adderall he increased his Wellbutrin back up to 150 mg three times a day. He says he feels
okay on that, much calmer, but he is having to use the bathroom ten or fifteen times a day and
finds that annoying. He wants to know if there is anything else that might be helpful.

Objective: He is casually dressed and neatly groomed. He is pleasant and cooperative. Mood is
"okay." Affect is euthymic. There is no evidence of psychotic thinking or hallucinations. There
is no suicidal ideation. He is describing frequent urination on the Wellbutrin.

Diagnosis:

AXIS I:      Depressive disorder, NOS with features of anxiety (311).
             Probable ADHD.
AXIS II:     Diagnosis deferred.
AXIS III:    Celiac disease.

Assessment: As he is having a suboptimal response on the Wellbutrin, and is having side effects,
we discussed the possibility of trying something else. I brought up Effexor. He is not sure
whether he has been on it in the past or not because he recognizes the name from many family
members who are on it. He would like to give it a try.

Plan: Decrease and then discontinue Wellbutrin. Discontinue Adderall as he is not taking it. Trial
of Effexor.

1)    Decrease Wellbutrin SR to 150 mg twice a day for three days, then 150 mg once daily for
      one week, then discontinue.
2)    Effexor XR 75 mg, one tablet daily x 1 week, then two daily x 1 week, then three daily.

He will be seen again in two months for follow up on July 24, 2002, at _1:00_____.

Schuyler Whitman, M.D./kmg

SERVICENET MED CLINIC

Steve Boutin                    Client # 19407                    S. Whitman, MD
5/1/02                              (22)                    Patient was seen for 30 mins.

Data: This is a 45-year old white male who comes for medication follow-up. He was started on
Wellbutrin at his first visit in March. He contacted the clinic after about a month and said that he
was feeling only about twenty percent better on the medication. It was recommended that he
increase the Wellbutrin to 150 mg.t.i.d.

Today he says he feels calmer and he finds that it is much easier for him to speak. He is not tripping
over his words and finding to find the word that he needs to say. So that is very pleasant. However,
he doesn't notice a marked improvement since going up on the dose and he wants to know about
trying the Adorall. He is not feeling particularly depressed. *Adderall*.

Objective: He is casually dressed, neatly groomed. He is pleasant and cooperative. Mood is "okay."
Affect is brighter than at the last visit. There is no evidence of psychotic thinking or hallucinations.
There is no suicidal ideation. He says he does have some sexual side effects on the increased
Wellbutrin, decreased sensation.

Assessment:

AXIS I:          Depressive Disorder, NOS, with features of anxiety.
                 Probable ADHD.
AXIS II:         Diagnosis deferred.
AXIS III:        Celiac disease.

There hasn't been a great improvement and he is having some side effects on the increased dose of
Wellbutrin. I recommend he go back down to the twice a day dose, particularly if we are going to
give him a trial of Adderall. Risks, benefits and side effects discussed. I advised him to begin with
5 mg in the morning and add 5 mg later in the day if needed (not too late so as to disrupt sleep). He
can then go up to two 5 mg pills if needed and tolerated. He is agreeable.

Plan: He was given the following new prescriptions:

1.      Wellbutrin SR 150 mg 1 tablet twice a day, #60 with one refill.
2.      Adoral 5 mg 1-2 tablets po q.d. to b.i.d., #120 with no refill. *Adderall*

He will be seen again Wednesday, May 29th at 3 p.m., in Chicopee.

Schuyler Whitman, M.D./pmt

## SERVICENET MED CLINIC

Steve Boutin                    #19407 (22)                    Schuyler Whitman, M.D.

3/7/02                                                    The patient was seen for 60 minutes.

Data: This is a 45 year old divorced white male living with his 9 year old daughter. He works in sales at Home Depot where he has worked for 11 years.

He says that he is "tired too much". He has chronic poor sleep even though he sleeps about 7 to 8 hours a night and is not aware of awakening in the night and not being able to get back to sleep he very rarely feels rested. This has been a fairly lifelong problem. He says that he always has two or three or four things going on in his mind. He is vague when he is asked to describe what but denies obsessive worries or anxieties. He says there is always a song as one thing in his mind. He is very distracted and he has memory problems.

Looking back on it he says that he did well in school and was always in the top portion of his class until the 7th grade when he had trouble --. Then he couldn't go on to geometry and from then on he had more and more problems in school. He lost interest and did finish high school but only by going through the motions.

He describes himself as sometimes quick tempered. If he has to work and work hard all he can concentrate on is work. He cannot be sociable at the same time. It is hard for him to get back to things if he is distracted.

He came here because he saw a show on PrimeTime where a woman said that she had taken Adderall and it was like a radio station where three or four things were playing and suddenly the channel was changed and there was just one thing. That is what he would like.

Past Psychiatric History: He saw a doctor in Holyoke ten years ago. He was told his problem was depression and he was treated with Prozac. The dose was increased. That was the most helpful medication for him but he felt like after an initial good response it just didn't seem to do what he wanted it to do and he also got sexual side effects from which he couldn't tolerate. He said he was on a number of others although he does not know which. He recognizes the name Effexor and there is some question of whether he was on Zoloft. He says at one point the doctor was no longer taking his insurance and he didn't bother to follow up with anyone else. He denies a history of psychiatric hospitalizations, any history of suicide attempts or violent behavior.

Past Medical History: He says he has had a medical work up for his complaints of fatigue. He has had thyroid tests and a complete blood count and everything has been normal. He says a while ago he was diagnosed with Celiac Disease. He tried restricting his diet but it certainly didn't help in how he felt day in and day out. He denies a history of heart or liver problems, diabetes, high blood pressure or asthma. He denies a history of head injury, loss of consciousness, or seizures. There are no known drug allergies.

Steve Boutin, Page 2                                                                        3/7/02

Family History: A son who doesn't live with him has ADHD. He was first diagnosed at age 2 or
3, he is now 11. He has tried Ritalin but did not have a good response. He has also been on Zoloft.
Mr. Boutin is not sure what medication he is on now. He thinks his daughter might have ADHD.
She has had a lot of problems in school recently and can't remember things. His father had
"problems like me". His father was very tense. His only way to relax was by drinking alcohol.
He probably drank too much. A brother is on disability. He has a history of depression and some
other problems which the patient can't specify. He is on a number of medications.

Alcohol/Drugs: The patient drinks alcohol socially maybe one or two times a week. He says he
will have six pack of beer playing pool. He drinks to relax himself. He has never felt he had a
problem with the alcohol. He denies drug use. He has tried pot in the past and it put him to sleep.

Social History: He was born in Holyoke, raised in Chicopee. He grew up with his parents. He was
the oldest of three children. He had a brother and a sister. Growing up was "not much fun". His
father was a truck driver and not very involved with the family day to day life. His mother was a
"good stay at home mom" who went to work after his parent's separated when he was 19 years old.
They later divorced. There was a lot of fighting in the family growing up. He denies a history of
physical or sexual abuse.

He says that he was quite shy as a child. He had some close friends but always felt anxious and
uncomfortable socially. He spent too much time by himself. He might have been a little hyper.
He is not sure. He was very shy until the 6th or 7th grade and then he started clowning around.
He says he doesn't remember a lot of his childhood but he doesn't remember anything positive.
From the 7th grade on he had trouble remembering and trouble concentrating.

After high school he worked at a number of jobs such as in a restaurant, doing landscaping, doing
construction work "I never had any direction, I didn't like working". He would spend a year here
and a year there and either quit or get himself fired. He denies a history of military service. He
denies a history of legal problems other than being in probate court for divorce.

He was married 11 years ago and separated 9 years ago. He said after they had their daughter his
wife became "out of control" and abusive towards him. He said he hasn't had any other long term
relationships that have been monogamous. Right now that is not a particular concern of his.

Mental Status Examination: This is a casually dressed, neatly groomed white male. He is polite
and cooperative. His mood is described as a "three on a scale of one to five". He denies mood
swings. He does talk about being chronically irritable. He admits to a depressed mood but feels
that is secondary to his long standing problems concentrating and being able to relax and socialize
with others. There are no overt delusions. He denies paranoid ideation. He says he sometimes
feels anxious all day long but denies acute anxiety attacks. He denies suicidal and homicidal
ideation. There is no grandiose ideation. He denies auditory and visual hallucinations. He is alert
and oriented x3. Immediate recall is three out of three. He remembers two out of three items at
five

Steve Boutin, Page 3                                                                    3/7/02

minutes. Recent memory is grossly intact although a rough screening was done. Remote memory is vague. He fills out ADHD symptom scales regarding childhood between the ages of 5 to 12 and adulthood during the past six months (see attached in chart).

Assessment: This man does not clearly fit the criteria for ADHD however there are some characteristics which are very compatible with the diagnosis. As I discussed with him by definition symptoms should occur before age 7. He dates his symptoms to age 13 and doesn't identify any major stressors around age 13. It is possible that he had symptoms before that but he is not able to recognize or recall them.

His work history does sound very much like someone with a history of ADHD, not sticking with any one particular job for very long. He has stayed at his most recent job for 11 years and says that his life changed after he had kids in that he took things a lot more seriously. Since his oldest child is 11 years old it sounds as if he finally forced himself to stick with one job when he had parental responsibilities.

There is a degree of depression and anxiety which I think needs to be treated. I discussed with him risks and benefits of various medications particularly Adderall which he came in asking for and also Wellbutrin which would be my first choice for treating him. He has some reluctance to start with a stimulant particularly as I told him it could possibly increase anxiety and irritability and because I think besides his problems with concentration and memory there is depression and anxiety. I recommend Wellbutrin and he wants to go with that. Risk, benefits and side effects are discussed.

Diagnostic Impression:

AXIS I:      Depressive Disorder, NOS (311) with features of anxiety.
             R/O ADHD.
AXIS II:     Diagnosis deferred.
AXIS III:    Celiac Disease.
AXIS IV:     Moderate, single parent, children have problems, social isolation.
AXIS V:      Current GAF: 58.

Plan: Trial of Wellbutrin. He was given the following new prescription:

1.    Wellbutrin SR 150 mg 1 tablet in the morning for three days, then 1 tablet po bid, #60 with 1 refill.

He will be seen again in four to six weeks for follow up. His next appointment is 5-1 @ 2:30 in Chicopee

Schuyler Whitman, M.D./mcm

# In The United States District Court
## For The Western District of Massachusetts

| | |
|---|---|
| **Steve Boutin,** | **CIVIL ACTION NO.:** |
|         **PLAINTIFF** | American Disabilities Act; Discrimination Under Title VII, Civil Rights Act of 1964; Hostile Work Environment; Retaliation, |
| **v.** | Punitive Damages; Trial by Jury |
| **HOME DEPOT U.S.A., INC.,** | |
|         **DEFENDANT** | |

## COMPLAINT

TO THE HONORABLE COURT:

COMES NOW PLAINTIFF, through the undersigned attorney and respectfully allege and prays:

1. This is an action for compensatory and punitive damages for Defendant's violation of Plaintiff's federally protected rights under the Laws of the United States and the Laws of the Commonwealth of Massachusetts.

### JURISDICTION AND VENUE

2. Jurisdiction of this action is founded upon Section 107 (A) of the American Disabilities Act (hereinafter "ADA"), 42 U.S.C. 12101, et seq. which incorporates by reference Section 706 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-5, as amended.

3. Venue of this action is proper under 28 USC Sec. 1391 (b). Supplemental jurisdiction (28 USC Sec. 1367) is invoked for the claims arising under the

violation of following Massachusetts Laws; M.G.L. 151B, §4(1), M.G.L. c. 151B § 4(4)). M.G.L. c. 93, ' 102 (equal rights act), sex discrimination in violation M.G.L. c. 15 1 B, ' 4(4), and retaliation in violation of ' 4(4A) for exercising his rights under that provision.

4. All conditions precedent to jurisdiction under Section 706 of Title VII, 42 USC Section 2000e-5(f)(3) have occurred or been complied with:

   a. A charge of employment discrimination on the basis of disability discrimination was timely filed with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the commission of the unlawful employment practices alleged herein.

   b. A Notice of Right to Sue was sent by the EEOC, dated April 6, 2005. The Notice was received by Plaintiff on or about April 8, 2005.

   c. This Complaint has been filed within 90 days of receipt of the EEOC's Notice of Right to Sue.

**PARTIES**

5. Plaintiff Steve Boutin (hereinafter Boutin or Plaintiff) is an adult and a resident of Chicopee, Massachusetts and a citizen of the United States.

6. Defendant, Home Depot U.S.A., Inc. (hereinafter "Home Depot" or "Defendant") is upon information and belief a corporation and/or legal entity organized under the Laws of the Commonwealth of Massachusetts.

7. Defendant is corporation and/or legal entity subject to the laws of the United States and of the Commonwealth of Massachusetts, including American with Disabilities Act, 42 USC 12101-13, et seq.

8. Defendant is an "employer" within the meaning of 42 USC 12111, employing 15 or more employees for each working day, in each of 20 or more calendar weeks in the current and preceding calendar year, and engaged in an industry affecting commerce.

9. Defendant is a "person" within the meaning of Section 107 (7) of the ADA, 42 USC Section 12111 (7), and Section 701 of the Title VII of the Civil Rights Act of 1964, 42 USC Sec. 2000e.

10. Defendant is engaged in an industry that affects commerce within the meaning of Section 101 (7) of the ADA, 42 USC Sec. 12111 (7), and Section 701 of the Civil Rights Act of 1964, 42 USC Sec. 2000e.

## FACTS

11. Plaintiff is a full-time single parent with full custody.

12. Plaintiff suffers from depression and anxiety for which he is being treated by Dr. Schuyler Whitman.

13. Plaintiff was hired as a Receiving Associate at Store #2662 in West Springfield, Massachusetts on or about April 1, 1991.

14. Upon hire, Plaintiff was assured by Defendant that Plaintiff would always have a schedule that would accommodate his child care needs.

Case 3:05-cv-30162-MAP    Document 16-6    Filed 09/19/2006    Page 4 of 8

15. Mr. Boutin worked in several different departments and positions throughout his employment with Defendant.

16. Plaintiff's job performance has always been satisfactory.

17. On several occasions during the year 2003, Plaintiff approached his department manager, Patricia LeFore, to request a change in his schedule to accommodate his child-care issues.

18. Mr. Boutin explained to Ms. LaFore (female) and later to store manager, Chris Catalina (female), that he needed to adjust his hours to permit him to care for his 11-year old daughter after school.

19. Plaintiff further explained and formally informed Defendant that Plaintiff is disabled due to depression and anxiety which is exacerbated by Home Depot's schedule restrictions and his inability to care for his daughter after school.

20. Plaintiff had previously submitted a recommendation from his treating physician, Dr. Whitman, dated June 25, 2003, confirming his ongoing treatment for depression and anxiety and his need for schedule change.

21. Plaintiff's treating physician, Dr. Whitman, explained that, without the accommodation sought by Plaintiff, his anxiety and depression would be further exacerbated.

22. Rather than accommodate Plaintiff's request for a specific schedule, Ms. LaFore summarily denied the request and threatened to place Plaintiff on a rotating schedule with no set hours.

23. Ms. LaFore's conduct merely served to exacerbate Mr. Boutin's ongoing depression and anxiety.

24. Ms. LaFore intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of her conduct.

25. On or about July 15, 2003, Plaintiff filed a charge with the Commission Against Discrimination for disability and gender discrimination.

26. At the time of Plaintiff's request for a work schedule change, Defendant had been informed of Plaintiff's disability within the meaning of Section 107 (7) of the ADA, 42 USC Section 12111 (7).

27. Plaintiff's immediate supervisor, Dory Farrington, granted Plaintiff's schedule change.

28. Plaintiff then informed the department manager, Patricia LeFore, that Farrington granted his request for a schedule change.

29. Ms. LeFore, later informed Plaintiff that his request for a schedule change will be denied.

30. Upon the news that that Plaintiff's request for a schedule change was denied, his medical condition became exasperated.

31. Plaintiff is under the care of a doctor for his disability. Upon Plaintiff's visit with his doctor, the doctor suggested that he change his working hours in order to help stabilize his anxiety levels

32. Plaintiff was subjected to discrimination because of his disability (Depression and Anxiety disorder) and gender (male)." Plaintiff was subjected to illegal discrimination, specifically, denied scheduling accommodations for childcare issues, while female associates are accommodated.

33. Plaintiff was denied reasonable accommodation despite his disability (Depression and Anxiety disorder).

## FIRST CAUSE OF ACTION
Violation of American with Disabilities Act)

34. Plaintiff repeats and re-alleges each and every preceding allegation as if fully set herein.

35. Boutin is, and was, at the time of his claim of discrimination an individual with a "disability" within the meaning of Section 3 (2) of the American with Disabilities Act, 42 USC Sec. 12102 (2), since he has been retaliated against for asserting his constitutional rights.

36. Boutin is a "qualified individual with a disability" as that term is defined in section 101(8) of the ADA. More specifically, Boutin is an individual with a disability who could perform the essential function of his job at the time he employment discrimination claim.

37. As a direct and proximate result of the violations of Boutin's rights by Defendant, he has suffered and continues to suffer depression, and other substantial damages such as physical and emotional pain, distress, and mental anguish, humiliation and other non-pecuniary losses.

## SECOND CAUSE OF ACTION
(Unlawful Retaliation in violation of G.L. c. 151B § 4(4))

38. Defendant retaliated against Plaintiff by verbally harassing Plaintiff.

39. Defendant retaliated against Plaintiff for having engaged in protected activity

Case 3:05-cv-30162-MAP     Document 16-6     Filed 09/19/2006     Page 7 of 8

when he reasonably and in good faith believed that he was discriminated against and acted reasonably in response to that belief by filing a claim of discrimination with the Massachusetts Commission Against Discrimination (MCAD) Commission because of his sex (male) and "Disability" as that term is defined in section 101(8) of the ADA.

40. These adverse actions occurred within a time period reasonably close to the protected activity such that retaliation can be inferred.

41. Plaintiff repeats and re-alleges each and every preceding allegation as if fully set herein..

42. Plaintiff has suffered mental anguishes and economical hardships as a consequence of Defendants unlawful harassment.

Plaintiff requests the judgment of this Court against Defendants as follows.

    a. Grant Plaintiff the right to a jury trial.

    b. Find and hold that Plaintiff suffered from Defendants' acts of discrimination on the basis of gender and disability as that term is defined in section 101(8) of the ADA .

    c. Award Plaintiff compensatory damages under ADA for the acts of discrimination as well as for the depression, physical and emotional pain, distress, mental anguish, humiliation and other non-pecuniary losses.

    d. Award Plaintiff punitive Damages under ADA.

    e. Order the Defendant to pay Plaintiff compensatory damages for depression, physical and emotional pain, distress, mental anguish, loss of

enjoyment of life, humiliation and other nonpecuniary losses, due to Defendants discriminatory acts.

WHEREFORE, it is respectfully requested from this Honorable Court to consider and grant this Complaint, awarding Plaintiff the aforementioned relief, plus prejudgment and post-judgment interest, all legal costs and attorney fees. Such further relief as the Court may deem just and proper.

**PLAINTIFF REQUEST A JURY TRIAL**

**DATE: JULY 7, 2005**

Respectfully submitted,

**STEVE BOUTIN
BY HIS ATTORNEY**

**Tammy Sharif, Esq.
BBO# 659134
The Historical Walker Building
1242 Main Street, Suite 314
Springfield, MA 01103**
413-439-0200