UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

STEVE BOUTIN,                          )
                    Plaintiff          )
                                       )
          v.                           ) C.A. No. 05-30162-MAP
                                       )
HOME DEPOT U.S.A., INC.,               )
                    Defendant          )

MEMORANDUM AND ORDER REGARDING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT
(Dkt. No. 15)

May 18, 2007

PONSOR, D.J.

## I. INTRODUCTION

Plaintiff Steve Boutin has filed this action against Defendant Home Depot U.S.A., Inc. ("Home Depot"), alleging a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12102, et seq., unlawful retaliation in violation of Mass. Gen. Laws ch. 151B, § 4(4), negligent or intentional infliction of emotional distress,[1] and gender discrimination in violation of Mass. Gen. Laws ch. 151B.

Defendant has filed a Motion for Summary Judgment (Dkt. No. 15), contending that the facts, even viewed in the light most favorable to Plaintiff, will not support a claim on any

_____

[1] During the hearing on February 26, 2007, Plaintiff voluntarily dropped his claim for negligent infliction of emotional distress.

theory.  For the reasons set forth below, Defendant's motion
will be allowed.

## II. <u>BACKGROUND</u>

Plaintiff has not contested any of the facts set forth
in Defendant's Statement pursuant to Local Rule 56.1.  The
court will therefore take the undisputed facts from
Defendant's statement, occasionally supplemented with parts
of Plaintiff's deposition and the complaint.

A.   <u>Employment with Defendant</u>.

Plaintiff, a 50 year-old male, throughout the relevant
time period was a single father of two children.  On April
1, 1991, he was first employed as a Receiving Associate at
Home Depot Store #2662 in West Springfield, Massachusetts.
He worked in several departments as an associate, until he
was assigned to Defendant's phone center some time in 2000.
Home Depot approved a set schedule for Plaintiff when he was
awarded sole custody of his daughter in 1993.  Since that
time, Plaintiff has worked, and continues to work, from 8:30
a.m. to 5:30 p.m., Monday through Friday.

B.   <u>Custody Arrangement</u>.

Plaintiff and his ex-wife had a visitation arrangement,
whereby she picked up his daughter after school on Mondays,
Wednesdays, and Fridays and kept the child every other

-2-

weekend.  Plaintiff would pick up his daughter at 6:00 p.m. on the days she was at his ex-wife's house.  On Tuesdays and Thursdays, Plaintiff's daughter was cared for by one of two neighbor-friends when she got out of school, until Plaintiff arrived home around 6:00 p.m.  Plaintiff's son lived with his mother, except twice a week in the evenings and every other weekend when Plaintiff had visitation.[2]

C.  Illness.

In early 2002, Plaintiff was diagnosed with a Depressive Disorder with features of anxiety.  He was prescribed two medications -- Diazepam to help with sleep, and Wellbutrin to reduce stress during the day.  On average, the medications alleviated his symptoms of anxiety and depression by fifty percent.  Plaintiff's symptoms became overwhelming only "intermittent[ly]." (Dkt. No. 16, Boutin Dep. 101:14-18.)  Plaintiff's depression and anxiety inhibited what Plaintiff characterized as "the energy or the willingness to go out, do things after work.  Maybe go places with my kids or have a social life of my own or attend parties."  (Id. 100:24-101:3.)

---

[2] Plaintiff now has full custody of his son.

Dr. Schuylar Whitman's clinical evaluation, dated August 4, 2003, noted that the Diazepam helped Plaintiff relax at night and sleep well and be less anxious during the day. The doctor's overall assessment was that Plaintiff was doing well.  He noted on November 17, 2003, that Plaintiff himself reported that he was doing well and that he was not overtired.

D.    <u>First Accommodation</u>.

Home Depot instituted a policy in May of 2002, requiring all full-time employees to work a flexible schedule. Plaintiff specifically signed a policy change notice form, informing him that all full-time associates were full-time flexible and might be re-scheduled at various time to accommodate Defendant's business needs.

Plaintiff became concerned about the impact of an unpredictable schedule on his ability to cope with his depression and anxiety.  On May 13, 2002, Plaintiff submitted the first of four notes from his psychiatrist, Dr. Whitman.  The note informed Plaintiff's supervisors that Plaintiff was suffering from depression and anxiety. Furthermore, Dr. Whitman asserted that "any changes in his schedule to include weekends or nights would be very

-4-

detrimental to his mental status and could cause a setback in his treatment." Upon receipt of this notification, Defendant's store manager agreed to accommodate Plaintiff's medical problem by giving him a set, rather than a variable, schedule. At the same time, he requested that the doctor's notes be updated periodically. To this day, Defendant has kept its promise, and Plaintiff, unlike virtually all other employees in Plaintiff's position, works a specific, pre-set schedule.

E.  Second Requested Accommodation.

In the summer of 2003, Plaintiff requested his fixed schedule be changed from 8:30 a.m. to 5:30 p.m., Monday through Friday, to 7:30 a.m. to 4:30 p.m., Monday through Friday. The change request was not precipitated by any medical need, but by a change in his daughter's school hours. Apparently, when Plaintiff's daughter changed schools, her school bus picked her up an hour earlier. Plaintiff did not want to be "hanging around" after his daughter left and wanted to get to work earlier and be available for his daughter on the days she was with him an hour earlier in the afternoon. Defendant ultimately denied this second request for a one-hour adjustment in Plaintiff's

regular schedule.

Plaintiff does not contest that his request for an earlier schedule, starting at 7:30 a.m. and ending at 4:30 p.m., would, if granted, have created a significant problem regarding coverage at the Phone Center.  The Phone Center required coverage until 6:00 p.m..  Even with Plaintiff's 5:30 p.m. departure, Defendant's managers were regularly forced to take an employee from a different position to replace Plaintiff.  Obviously, a 4:30 p.m. departure would have exacerbated this problem.

According to Plaintiff, Defendant's refusal to permit the one-hour adjustment increased his anxiety and exacerbated his medical condition, but this contention lacked support from his physician.  On June 23, 2003, Dr. Whitman submitted a second note to Home Depot, informing Defendant of Plaintiff's medication regimen.  The note stressed that a <u>change in schedule</u> would "impair his ability to cope" but said nothing about the requested time adjustment.  Again, in March 2004, the doctor submitted another note that merely recommended reducing stressors for Plaintiff as much as possible, without mentioning any modest adjustment in his regular schedule.

-6-

The failure of Defendant to grant him the one-hour schedule change ultimately became the basis for his various claims against Defendant.

F.  <u>Massachusetts Commission Against Discrimination Charge</u>.

On July 16, 2003, Plaintiff filed a charge with the Massachusetts Commission Against Discrimination ("MCAD").  .

On May 13, 2004, the MCAD issued a Dismissal and Notification of Rights, and on July 7, 2005, Plaintiff filed this action.

After Plaintiff's complaint with the MCAD had been filed, Plaintiff began to feel that his supervisors were harassing him verbally.  One female supervisor left Plaintiff without help to do the job "two or three people should be doing."  (Boutin Dep. 107:12-14.)  Plaintiff concluded that this supervisor did not like him because he was a man.[3]  Plaintiff also believed that another female

---

[3] When asked what other incidents Plaintiff could recall, he responded:

> It is hard to say specifically because they were really stupid things.  Like [another Phone Center associate] used to sit there on her break and watch DVD's and [the supervisor] made her sit on the other side of the room so that I couldn't see them while I was doing my job. . . .
>
> Just a lot of nitpicking little things.  Like if I

supervisor harassed him because of his gender as well.[4]
Finally, Plaintiff alleges that at one time a male
supervisor told Plaintiff that if he "wasn't careful with
the path [he] was following, [Plaintiff] would be on the

_____

> put a product next to my work station so I wouldn't
> forget to buy it and take it home, she would say you
> can't do that. But she does it all the time. And it
> was reported to me that she had the new person next
> to me spying on me. Every time I left my work
> station she would call him and ask him secret little
> questions about me. . . .
>
> She had [another associate] reported me for . . .
> saying something inappropriate. . . .
>
> It just seems to me that ever since I asked for that
> schedule request and I was denied the accommodation
> because I was a man that they were retaliating, they
> were keeping me in there, they were making my job
> just as difficult as possible hoping I would quit or
> give up or something.

(Boutin Dep. 108:11-110:23.)

   [4] In response to a question about the second supervisor's
harassment, Plaintiff responded:

> [S]he doesn't seem to like me as a man and she would
> try to take control over me whenever nobody was
> around. There is like four different occasions after
> denying my accommodation that she pulled me aside and
> said: "You're going to do what I tell you to do. I
> am your boss and this is the way it was going to be."
> . . .
>
> [She] us[ed] every opportunity to get me alone to
> reassert herself that she was my boss and I should be
> doing what she tells me. And she was angry I went
> over her head to talk to Chris Catalina about the
> scheduling issue.

(Id. 111:5-114:2.)

outside looking in." (Id. 114:6-8.)

### III. DISCUSSION

In considering motions for summary judgment, the court must view the facts in a light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor. Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995), cert. denied, 516 U.S. 1113 (1996). Summary judgment is appropriate only when all the relevant pleadings and supporting documents, viewed in a light most favorable to the non-moving party, present no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Id. at 36 (citation omitted).

A.    The ADA.

The ADA prohibits employers from discriminating against "a qualified individual with a disability because of the disability." 42 U.S.C. §12112(a). The ADA is unusual in the context of federal civil rights statutes, as it imposes not only a prohibition against discrimination, but also, in a appropriate circumstances, a positive obligation to make reasonable accommodations. Soileau v. Guilford of Me., Inc., 105 F.3d 12, 14-15 (1st Cir. 1997). To assert a claim

-9-

for failure to accommodate under the ADA, Plaintiff must establish the following: (1) that he suffered from a "disability" within the meaning of the statute; (2) that he was a qualified individual in that he was able to perform the essential functions of his job, either with or without a reasonable accommodation; and (3) that, despite his employer's knowledge of his disability, the employer did not offer a reasonable accommodation for the disability. Carroll v. Xerox Corp., 294 F.3d 231, 237 (1st Cir. 2002).

1.  Disability.

The ADA defines "disability" as a physical or mental impairment which substantially limits one or more of an individual's major life activities.  42 U.S.C. § 12102(2). On the facts of this case, in order to pursue a claim under the ADA, Plaintiff has the burden of establishing the following three elements: (1) that he suffered a mental impairment; (2) that his impairment limited a major life activity; and (3) that the major life activity was substantially limited.  Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 20 (1st Cir. 2004).  This determination requires an "individualized inquiry" and must be done on a case-by-case basis.  Sutton v. United Air Lines, Inc., 527

-10-

U.S. 471, 483 (1999)

The First Circuit has recognized depression as a mental impairment that may constitute, in some circumstances, a disability under federal law.  Criado v. IBM Corp., 145 F.3d 437, 442 (1st Cir. 1998) (citations omitted).[5]  So far, the court has declined to decide whether an anxiety disorder may constitute an impairment.  See Rocafort v. IBM Corp., 334 F.3d 115, 119 (1st Cir. 2003); Carroll v. Xerox Corp., 294 F.3d 231, 239 (1st Cir. 2002).  It is not necessary to determine whether Plaintiff's disorder constitutes a "mental impairment" under the ADA because Plaintiff failed to establish that his disorder substantially limited a major life activity.  The next two elements, therefore, are dispositive to the disability issue.

A "major life activity" is an activity of central

---

[5] A number of other circuits have also recognized depression as a qualifying mental impairment.  See, e.g., Ogborn v. United Food & Commercial Workers Union, Local No. 881, 305 F.3d 763, 767 (7th Cir. 2002) ("Major depression can constitute a disability under the ADA."); Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1088 (9th Cir. 2001) ("[S]tress and depression can be considered mental impairments . . . under the ADA." (citations omitted), cert. denied, 534 U.S. 888 (2001); Pritchard v. S. Co. Servs., 92 F.3d 1130, 1132 (11th Cir. 1996) ("Depression has been held to constitute a mental impairment."), amended on other grounds by 102 F.3d 1118 (11th Cir. 1996), cert. denied, 520 U.S. 1274 (1997).

importance to people's daily lives.  Toyota Motor Mfg., Ky.,
Inc. v. Williams, 534 U.S. 184, 197 (2002).

Plaintiff contends only that his ability to socialize is
substantially limited by his disorder.  (See Boutin Dep.
100-102.)  However, the First Circuit has declined to
recognize the "ability to get along with others" as a major
life activity.  Soileau, 105 F.3d at 15.[6]  Because Plaintiff,
on the undisputed facts of this case cannot demonstrate that
any major life activity, one of central importance to daily
life, has been affected by his disorder, he cannot pursue a
claim under the ADA.

Similarly, the undisputed facts make it clear that
Plaintiff's disorder does not cause any substantial
limitation on his life activities.  In Sutton, the Supreme
Court stated that "'substantially' suggests 'considerable or
'specified to a large degree.'"  527 U.S. at 491.

Here, it is obvious that Plaintiff has not produced any

_____

[6] As the Solieau court noted, while "[t]he EEOC Compliance
Manual does list interacting with others as a major life
activity," the publication is not binding.  105 F.3d at 15 n.2
(citations omitted).
    Ultimately, Soileau concluded that it would be
"problematic" to "impose legally enforceable duties on an
employer based on such an amorphous concept."  Id. at 15.

-12-

facts that show his life activities have been substantially
limited by his depression and anxiety.  At most, Plaintiff
feels a diminished inclination or ability to socialize as a
result of his depression.  But those effects are
"intermittent."  (Boutin Dep. 101:13.)   Without intending
to minimize the occasionally distressing nature of
Plaintiff's malady, the court cannot find that these
inconveniences amount to a substantial limitation as defined
by the ADA.

  2.   <u>Reasonable Accommodation</u>.

  In addition to establishing that he is a "qualified
individual" under the ADA, Plaintiff must also show that
Defendants knew of this disability and still refused to
reasonably accommodate him.  <u>See</u> <u>Estades-Negroni v. Assocs.</u>
<u>Corp. of N. Am.</u>, 377 F.3d 58, 63 (1st Cir. 2004).
Reasonable accommodations may include job restructuring and
part-time or modified work schedules.  <u>Ward v. Mass. Health</u>
<u>Research Inst., Inc.</u>, 209 F.3d 29, 34 (1st Cir. 2000).

  A reasonable accommodation is one that enables an
employee to do the essential functions of his job but is
also feasible for the employer.  <u>Reed v. Lepage Bakeries,</u>
<u>Inc.</u>, 244 F.3d 254, 259 (1st Cir. 2001).  "A careful,

individualized review of an accommodation request in light
of the specific facts of the case is needed to determine
whether the request was reasonable." Calero-Cerezo, 355
F.3d at 23 (citation omitted).

A request for an accommodation is "unreasonable" if it
would constitute an "undue hardship" for the employer.
Ward, 209 F.3d at 36. "An adequately supported denial of an
accommodation request requires the employer to produce at
least some modicum of evidence showing that the [requested
accommodation] would be a hardship, financial or otherwise."
Calero-Cerezo, 355 F.3d at 23 (citation omitted).

It is undisputed that Plaintiff's initial request for an
accommodation -- his request that his schedule remain
constant -- was quickly granted. It is equally undisputed
that Plaintiff's second request -- for the one-hour
adjustment -- was not related to his purported disability
but rather to his preference for a work day that matched his
child's schedule more comfortably. Defendant offered
compelling reasons why this accommodation would have
constituted an undue hardship, related to business hours and
the imposition on other employees.

Even putting aside the issue of undue hardship, nothing

-14-

about this chronology suggests that Plaintiff was denied a reasonable accommodation for his depressive disorder. Plaintiff has already been accommodated in a way that allowed him to perform the essential functions of his job. His latest request for accommodation related only to his childcare responsibilities.  That Plaintiff might make such a request is understandable; that Defendant has denied it cannot constitute a violation of the ADA.

Since Plaintiff has failed to show he was disabled under the statute and that he was denied a reasonable accommodation by Defendant, Defendant is entitled to summary judgment on the ADA claim.

B.    <u>Retaliation</u>.

"To succeed on a claim of retaliation, the plaintiff must prove that [he] reasonably and in good faith believed that the [employer] was engaged in wrongful discrimination, that [he] acted reasonably in response to [his] belief, and that the [employer's] desire to retaliate against [him] was a determinative factor in its [unfavorable employment] decision . . . ." <u>Abramian v. Pres. & Fellows of Harvard Coll.</u>, 432 Mass. 107, 121 (2000) (internal quotation marks and citation omitted).  Filing a complaint with the MCAD

constitutes protected conduct.

An adverse employment action is employer conduct that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 126 S.Ct. 2405 (2006).

Here, Plaintiff's claim fails because he cannot show that he suffered any adverse employment action. His supervisors' "nitpicking" simply will not suffice. Personality conflicts and "snubbing" by supervisors at work do not constitute actionable conduct. Id. at 2415. Thus Defendant is entitled to summary judgment on the retaliation claim.

C.    Intentional Infliction of Emotional Distress.

The Workers' Compensation Act applies when a worker "receives personal injury arising out of and in the course of his employment." Mass. Gen. Laws ch. 152, § 26 (2007). Under it, "[a]n employee shall be held to have waived his right of action at common law . . . if he shall not have given his employer, at the time of his contract of hire, written notice that he claimed such right . . . ." Mass. Gen. Laws ch. 152, § 24 (2007).

Since Plaintiff has not alleged that he made any effort

to protect this right, his intentional infliction of emotional distress claim is barred by the Worker's Compensation statute, and Defendant is entitled to summary judgment on this claim.  See Hinchey v. NYNEX Corp., 144 F.3d 134, 146 n.7 (1st Cir. 1998).

D.    Gender Discrimination.

Claims for sex discrimination under Mass Gen. Laws ch. 151B are reviewed pursuant to the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  First, Plaintiff must establish a prima facie case of discrimination.  Id. at 802.  Then, the burden shifts to Defendant to show a legitimate, non-discriminatory purpose for the adverse employment action.  Id.  Finally, if Defendant can produce such a nondiscriminatory purpose, Plaintiff must show that the employer's reasons are a pretext for a discriminatory purpose.  Id. at 804.

An employee alleging sex discrimination must first establish a prima facie case by showing the following: (1) he belongs to a protected class; (2) he performed his job satisfactorily; (3) his employer took an adverse employment decision against him; and (4) discriminatory animus caused the decision to take the adverse employment action.

-17-

<u>Santiago-Ramos v. Centennial P.R. Wireless Corp.</u>, 217 F.3d 46, 54 (1st Cir. 2000).

Again, this claim fails due to Plaintiff's inability to show an adverse employment action.  An adverse employment action is one that affects "wages, bonuses, benefits or ability to perform [his] duties."  <u>Swallow v. Fetzer Vineyards</u>, 46 Fed. Appx. 636, 646 (1st Cir. 2002). Plaintiff offers no evidence of how any action by Defendant affected his ability to perform his job.  His regular schedule already represents a substantial accommodation, and a refusal to adjust the schedule further could not be viewed as an adverse employment action.  Finally, the record offers no evidence, beyond Plaintiff's speculation, of any gender-based animus against him of any kind.

In sum, based on the foregoing, Defendant is entitled to judgment on the gender discrimination count.

### IV. <u>CONCLUSION</u>

For the reasons set forth above, Defendant's Motion for Summary Judgment (Dkt. No. 15) is hereby ALLOWED.  The clerk will enter judgment for Defendant on all counts.  This case may now be closed.

It is So Ordered.

-18-

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge